Argued and submitted November 16, 2020; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings February 25, 2021

STATE OF OREGON,
*Respondent on Review,*

*v.*

DAEZHAR OMANI BANKS,
aka Daezhar Olmani Banks,
*Petitioner on Review.*

(CC 17CR64677); (CA A168210); (SC S067549)

481 P3d 1275

During *voir dire*, the prosecutor stated, over defense counsel's objections, that "the rules of evidence" limited what she could present to the jury, that "some things are not going to come into the trial today" and that the jury was "not going to have all the facts." Defendant was convicted of the single charged crime, and the Court of Appeals affirmed without opinion. *Held*: (1) The trial court erred in overruling defense counsel's objections to the prosecutor's statements, which improperly suggested that the state possessed evidence against defendant that it was not able to present at trial, and (2) the error was not harmless because the statements related to a central issue on which the jury was focused and undercut a part of defendant's defense.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Sarah De La Cruz, Deputy Public Defender, Office of Public Defense Services, argued the cause and filed the briefs for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender.

Joanna Hershey, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* Appeal from Multnomah County Circuit Court, Leslie Bottomly, Judge. 301 Or App 853, 455 P3d 1046 (2020).

DUNCAN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

## DUNCAN, J.

In this criminal case, the state charged defendant with harassment based on an incident at a mobile phone store. Before trial, the state provided defendant with a video from the store's security system, but the video did not show the alleged harassment. During *voir dire*, the prosecutor told the prospective jurors, over defense counsel's objections, that "the rules of evidence" limited what she could present to the jury, that "some things are not going to come into the trial today," and that the jury was "not going to have all the facts." In support of his objections, defense counsel argued that the prosecutor's statements implied "that there's more video, but for some reason that video didn't get to come in by the rules of evidence." Defense counsel asked the trial court to instruct the jury that it should not assume that "the rules of evidence have precluded any evidence at this point." The court denied defense counsel's request.

During the trial, defense counsel disputed that defendant had committed the alleged harassment and argued, among other things, that, although the store had three security cameras and one of its employees had testified that the cameras would have captured the full incident, the state had failed to produce video of the alleged harassment. During deliberations, the jury sent questions to the court, asking if the prosecutor knew whether there was video of the alleged harassment and, if so, whether the prosecutor was required to show it at trial. The court responded by telling the jury that it had been "provided the admitted evidence in this case" and that the court was "unable to provide further response." The jury found defendant guilty.

Defendant appealed, arguing that the trial court committed reversible error by overruling defense counsel's objections and denying his requested jury instruction. The Court of Appeals affirmed without opinion. *State v. Banks*, 301 Or App 853, 455 P3d 1046 (2020). On defendant's petition, we allowed review. For the reasons explained below, we conclude that the trial court erred by overruling defense counsel's objections and that the error was not harmless. Therefore, we reverse the Court of Appeals' decision and the

trial court's judgment, and we remand the case to the trial court.[1]

## HISTORICAL AND PROCEDURAL FACTS

The state charged defendant with one count of harassment. Harassment is defined by ORS 166.065, which provides, in part, "A person commits the crime of harassment if the person *** [h]arasses or annoys another person by *** [s]ubjecting such other person to offensive physical contact." The state based the charge on an incident at a T-Mobile store, during which, according to the state, defendant got into a disagreement with another customer, Trees, and swatted her ponytail.

Before trial, the state provided defendant with discovery, including a video from the store's security system. The video did not show defendant swatting Trees's ponytail.

During *voir dire*, the prosecutor discussed the requirement that the state prove its case beyond a reasonable doubt. To illustrate the amount of evidence required, the prosecutor used a hypothetical example. She described a situation in which there was evidence that a child had eaten cupcakes, and she asked the prospective jurors whether the evidence was sufficient for them to find, beyond a reasonable doubt, that the child had eaten the cupcakes. One of the jurors raised the possibility that the jurors might not have all the information necessary to correctly determine whether the child had eaten the cupcakes. In response, the prosecutor told the jurors that the "rules of evidence" limit what she can present:

> "Okay, okay. So that kind of brings up a really good topic of discussion for you all today, and it's *something to keep in mind throughout the trial*. There is this thing called *the rules of evidence* in Oregon. And that kind of discusses and *gives me parameters of what I can present to you*."

(Emphases added.) Defense counsel objected, asserting that the prosecutor was "getting into discussing the law," specifically,

---

[1] Because we conclude that the trial court erred by overruling defense counsel's objections and that that error requires reversal, we need not, and do not, address defendant's argument that the trial court also erred by failing to give defense counsel's requested jury instruction.

the "rules of evidence." The trial court told the prosecutor to "go ahead." The prosecutor continued:

> "[PROSECUTOR]:   So *with the rules of evidence*, it's kind of a rule book for me and [defense counsel] about what we can talk about and present to you. *And some things are not going to be coming in*.

> "[DEFENSE COUNSEL]:   Objection, Your Honor. She's implying—

> "THE COURT:   Overruled.

> "[PROSECUTOR]:   *So some things are not going to come into the trial today*. And as jurors, you are the arbiter of the facts. Does anyone kind of know what that means, arbiter of the facts? Anyone kind of—? Okay, what does it mean?

> "JUROR:   The people that are going to make the decision.

> "[PROSECUTOR]:   "Yes, it does. It does mean that. So you're going to be the person deciding the facts of the case today. And the nature of evidence is that *you're not going to have all the facts*. And as jurors, you're not really allowed to speculate."

(Emphases added.) The prosecutor then told the prospective jurors that the jury's role was to "listen to the facts that are presented, and with those facts only, that's what you're going to think about in trial today."

After the lawyers finished questioning them, the prospective jurors left the courtroom and defense counsel requested a curative instruction, stating:

> "Your Honor, I would like to address the *voir dire* that was presented by the prosecution. In our case here, there's evidence that they don't have; that's why it is not coming in. But she made the implication that it's the rules of evidence that kept it out. And I think a curative instruction at this time would be appropriate to the jurors that do get selected."

Defense counsel explained:

> "[W]hen the prosecution was giving her *voir dire*, she asked—she told the jurors that the rules of evidence do

not allow all evidence to come in. Some of that evidence is kept out. So you're not going to be able to see all of the evidence. And now she's going to be implying—that implies that when we get to the video, and we show the video, it's implying that there's more video, but for some reason that video didn't get to come in by the rules of evidence."

The trial court said that it would "not give a curative instruction before we pick our jury" but that the court and the lawyers could discuss defense counsel's concern later.

After the jury was selected, the trial court read standard precautionary jury instructions. Among other instructions, the court gave the following instruction based on Uniform Criminal Jury Instruction 1004:

"As a judge, I'm gatekeeper regarding evidence. *I determine what the law allows to be evidence. In effect, the law considers anything that is not evidence to be unreliable. That is why we do not consider nonevidence in deciding the facts.* But just because something becomes evidence does not mean that it is necessarily reliable. You are ultimately— you are the determiner of what is reliable or what is believable or not believable. Let's see. You must decide what evidence is believable and how believable or persuasive any particular piece of evidence is.

"Evidence consists of testimony of witnesses and exhibits that are admitted into evidence. Testimony is what a witness, who has sworn or affirmed to answer questions truthfully, says while being examined as a witness. Exhibits are physical objects, such as photographs, letters, and other physical items. You'll be able to examine admitted exhibits during your deliberations. You may draw reasonable inferences from the evidence, but you're not to guess or speculate."

(Emphasis added.)

The lawyers then made their opening statements. The prosecutor did not mention the video. But defense counsel told the jurors that there were multiple cameras in the T-Mobile store but that they would not see any video showing the alleged harassment because none had been provided and that they would "get to evaluate that."

After the opening statements, the trial court asked defense counsel to reiterate his concern about the prosecutor's *voir dire*. Defense counsel replied:

> "During *voir dire*, [the prosecutor] began to talk about the rules of evidence, how the rules of evidence exclude relevant evidence sometimes. And I believe that causes the jurors to begin to impermissibly wonder about what evidence is out there that's not being presented that is in favor of the state."

Defense counsel told the court that he was "going to hammer hard on the fact that there's no video evidence" of the alleged harassment. He explained that one of his arguments was going to be that the state "did not make its best effort to get all the video," and, therefore, "we can't have the jury assuming that there actually is evidence out there that is favorable to the state." Because the trial court had not excluded any evidence that the state intended to offer, defense counsel asked the court to instruct the jury that it was "not to assume that the rules of evidence have precluded any evidence at this point." The trial court declined to do so.

During the evidentiary part of the trial, there was undisputed evidence that, on the date of the alleged harassment, defendant drove to a T-Mobile store with two acquaintances. Defendant went into the store to pay his mobile phone bill. While he was speaking to a store employee, Trees was standing at the same counter and speaking to another employee. One of defendant's acquaintances came into the store, stole a pair of headphones, and left.

What happened next was disputed at trial. The state's evidence was that Trees reported the theft to a store employee, which made defendant angry. The state's witnesses testified that defendant raised his voice, used hostile and discriminatory language against Trees, and swatted her ponytail. But defendant testified that it was Trees who used hostile and discriminatory language against him; he denied using such language and swatting Trees's ponytail.

Although the parties disputed what happened between defendant and Trees, there was undisputed evidence that, after their interaction, defendant's two acquaintances

got into a physical altercation with Trees and the police were called.

Cummins, the T-Mobile store manager, testified for the state. On cross-examination, Cummins testified that there were "a lot of video cameras in the store," including one focused on the counter where defendant and Trees had been standing. Cummins assumed that there would be "video of everything." Another T-Mobile employee, Brown, agreed that "there are cameras that see pretty much everything that goes on inside the store" and "they would show" what happened between defendant and Trees.

When the police investigated the incident, Cummins gave them a statement and referred them to the company's loss prevention department to obtain a copy of video of the incident. Before trial, Cummins spoke to the prosecutor but refused to speak to defense counsel. Brown also refused to speak with defense counsel.

As mentioned, during discovery, the state had provided defense counsel with a video from the T-Mobile store's surveillance system but the video did not show defendant swatting Trees's ponytail. The state did not introduce the video into evidence at trial, but defense counsel did. Trees testified that the video did not show the entire incident.[2]

In closing argument, defense counsel argued, among other things, that the state had failed to carry its burden of proof. He argued that the state had "the power to request" video of the alleged harassment but that it had "not produced that evidence." Instead, he argued, the state chose to rely solely on witnesses' memories "from nine months ago in a heated situation." He argued that the state was asking the jury to believe that there was video evidence that supported its case:

> "Where's the video? 'I have the video. It's available. Just believe us.' So the state's asking (indiscernible) video. 'Sure there's video. Forget about that. Trust the people. Don't trust your lying eyes.'"

_____

[2] The prosecutor told the trial court that she did not know why the state did not have video that showed the alleged harassment. Defense counsel told the trial court that his investigator had attempted to obtain video from T-Mobile, but "couldn't get anything, even a statement from them."

Defense counsel concluded by emphasizing that the state "did not provide any video" of the alleged harassment and urging the jury to conclude that the state had not proven its case beyond a reasonable doubt.

During deliberations, the jury submitted two written questions to the trial court, asking "Does the prosecutor know if the video [of the] hair smack exists?" and "If they know it exists, are they required to show it in trial?" The court responded, "You have been provided the admitted evidence in this case. I will instruct you we are unable to provide further response to this specific question."

As mentioned, the jury found defendant guilty, defendant appealed, the Court of Appeals affirmed without opinion, and we allowed defendant's petition for review. For the reasons explained below, we conclude that the trial court erred by overruling defense counsel's objections to the prosecutor's statements during *voir dire* and that the error was not harmless.

## ANALYSIS

Under both the state and federal constitutions, a criminal defendant has a constitutional right to a trial by an impartial jury, and that right includes the right to a verdict based solely on the evidence presented at trial. *State v. Amini*, 331 Or 384, 391, 15 P3d 541 (2000); *Holbrook v. Flynn*, 475 US 560, 567, 106 S Ct 1340, 89 L Ed 2d 525 (1986). As this court has explained regarding the right to an impartial jury under Article I, section 11, of the Oregon Constitution, "the guarantee of trial by an 'impartial jury' means a trial by a jury that is not biased in favor of or against either party, but is influenced in making its decision only by evidence produced at trial and legal standards provided by the trial court." *Amini*, 331 Or at 391. Likewise, the Supreme Court has explained that, "[c]entral to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely based on the evidence introduced at trial." *Holbrook*, 475 US at 567 (internal quotation marks and citations omitted).

Consequently, this court has ruled that a prosecutor may not suggest to a jury that the state has evidence against a defendant beyond that presented at trial. The cases of *State v. Newburn*, 178 Or 238, 166 P2d 470 (1946), and *State v. Wederski*, 230 Or 57, 368 P2d 393 (1962), are illustrative. In each of those cases, this court held that a prosecutor's statement that the state's ability to present evidence was limited by the rules of evidence was improper and required reversal.

In *Newburn*, the prosecutor told the jury that laws and rules limit what evidence the state can present:

> "'The state can only present legal testimony. That is the only testimony that is admissible under our laws and rules of this court, and *out of all of the facts in the District Attorney's office that we may have, we can only present such evidence as is admissible.*'"

178 Or at 241 (emphasis in *Newburn*). The defendant objected to the prosecutor's statement "'as intimating to the jury that the District Attorney had other evidence, though inadmissible, which tended to show the defendant's guilt and implied by such remarks an inference of defendant's guilt upon evidence which was inadmissible[.]'" *Id*. The trial court overruled the objection. *Id*.

The defendant was convicted and appealed. On appeal, this court held that the prosecutor's statement was "improper and was prejudicial to the rights" of the defendant because it suggested that the state had evidence that it could not introduce. *Id*. It injected "extrinsic and prejudicial matter" into the trial. *Id*. at 241-42. In addition, this court observed that the trial court's overruling of the defendant's objection "accentuated the error." *Id*. at 241. This court noted that, if the trial court had sustained the objection and instructed the jury to disregard the argument, "a different question would be presented." *Id*. at 242. But, because the trial court had not done so, reversal was required. *Id*.

In *Wederski*, the prosecutor's statements went further. In that case, the state contended that the defendant

had signed stolen checks and, after defense counsel argued that the state had failed to present any evidence that the handwriting on the checks was the defendant's, the prosecutor implied that he had a handwriting expert but that the rules of evidence had limited his ability to present the expert's testimony:

> "'You know that there are certain rules of evidence and certain requirements before we can use an expert witness. Mr. Clair Alderson, if any of you are familiar, sat through the entire trial and the right situation didn't present itself so that we could get his testimony on. You recall there was no denial by [the defendant] that that was his handwriting or perhaps we might have used our expert witness.'"

230 Or at 60. The defendant promptly moved for a mistrial, but the trial court denied the motion. The trial court stated that it would cure the error in the jury instructions, but it failed to do so. Among other things, it "failed to caution the jury that they could not consider the presence in the courtroom of silent witnesses in aid of the state's case." *Id*. at 60-61.

The defendant was convicted and appealed, and this court held that the trial court had abused its discretion by denying the defendant's motion for a mistrial. *Id*. at 60. This court observed that, had the trial court instructed the jury to disregard the prosecutor's improper argument, "the denial of the motion for a mistrial might well have been within the permissible limits of discretion," but that, because the trial court had failed to do so, "the case went to the jury with the prejudicial statements approved, so far as the jury knew, by the court's silence." *Id*. at 60-61.

This court further held that the erroneous denial of the defendant's motion for a mistrial was not harmless, noting that "[t]he state's reference to evidence it might have produced, but did not, was an open invitation for the jury to speculate in a manner which has been denounced by this court on several occasions." *Id*. at 61-62 (citing *Newburn*, 178 Or 238, and *State v. Pace*, 187 Or 498, 510, 212 P2d 755 (1949)). In addition, this court noted that accepting the state's harmless error argument "would lead only to erosion of the rights of defendants in other criminal trials." *Id*. at 61. This

court further noted that, even though the prosecutor's comment did not involve "calculated misconduct * * * it is well to remember that in the prosecution of a criminal action the state must stay within the boundaries which experience has proven are necessary to preserve a fair trial for the guilty as well as for the innocent." *Id*. at 62. Accordingly, this court concluded that it was "necessary to order a new trial." *Id*.

To summarize, a prosecutor may not make a statement to a jury that implies that additional evidence exists but cannot be presented because of "our laws and rules of the court," *Newburn*, 178 Or at 241-42, or the "rules of evidence," *Wederski*, 230 Or at 60-62. Such a statement injects "extrinsic and prejudicial matter" into the trial, *Newburn*, 178 Or at 241-42, and constitutes an "open invitation for the jury to speculate," *Wederski*, 230 Or at 61. *See also State v. Pinnell*, 311 Or 98, 108, 806 P2d 110 (1991) ("Asking a prospective juror a question containing inadmissible matter is an improper use of *voir dire*.").

If a defendant objects to such a statement and the trial court overrules the objection, the trial court "accentuate[s] the error." *Newburn*, 178 Or at 241. Although it may be possible for a trial court to remedy the harm caused by an improper statement by sustaining an objection to the statement and instructing the jury to disregard the statement, when the trial court fails to take such actions, reversal is required. *Id*. at 242. Similarly, if a defendant moves for a mistrial based on such a statement and the trial court denies the motion but fails to instruct the jury to disregard the statement, reversal is required. *Wederski*, 230 Or at 62.

Those rules are consistent with OEC 103(3), which provides:

"In jury cases, proceedings shall be conducted, to the extent practicable, so as *to prevent inadmissible evidence from being suggested to the jury by any means*, such as making statements or offers of proof or asking questions in the hearing of the jury."

(Emphasis added.) OEC 103(3) applies to statements by lawyers. *Cler v. Providence Health System-Oregon*, 349 Or 481, 490, 245 P3d 642 (2010) (holding that lawyer's reference to

information outside the evidentiary record was improper under OEC 103(3) and required reversal).[3]

Applying the rules from *Newburn* and *Wederski*, we conclude that the trial court in this case erred by failing to sustain defendant's objections to the prosecutor's statements during *voir dire*. This case is very similar to *Newburn*, in which the prosecutor told the jury that, under "our laws and the rules of this court" the state can "only present such evidence as is admissible." 178 Or at 241. Here, the prosecutor told the prospective jurors to "keep in mind throughout the trial" that "rules of evidence *** give[] me parameters of what I can present to you." Over defendant's objections, the prosecutor continued, stating that "some things are not going to be coming in," that "some things are not going to come into the trial today," and that the jury was "not going to have all the facts." Thus, the prosecutor's statements indicated that she was aware of "things" and "facts" that, because of the rules of evidence, would not be presented at trial. Notably, the prosecutor's statements were not general; they were specific to the state's case against defendant. They concerned what the prosecutor herself could present to the jurors in trial that day. As in *Newburn*, the prosecutor's statements were improper. They suggested that the state

---

[3] The holdings of *Newburn* and *Wederski* are also consistent with ethical rules and practice standards for lawyers. For example, Rule 3.4(e) of the Rules of Professional Conduct provides that "a lawyer shall not *** in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence[.]" And Standard 3-6.3(d) of the American Bar Association's *Criminal Justice Standards for the Prosecution Function* (2017) provides that a prosecutor "should not intentionally present arguments, facts or evidence which the prosecutor reasonably should know will not be admissible at trial."

References to matters outside the evidentiary record may be particularly harmful when made by a prosecutor. As the United States Supreme Court has observed:

"It is as much [a prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to brings about a just one.

"It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. *Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.*"

*Berger v. United States*, 295 US 78, 88, 55 S Ct 629, 79 L Ed 1314 (1935) (emphasis added).

had more evidence against defendant than would be presented at trial, thereby encouraging speculation, and they suggested that the reason the evidence would not be presented was because it had been excluded under the rules of evidence, thereby providing a potential excuse for any shortcomings in the state's evidence.

The state argues that the prosecutor's statements were not improper and contends that this case is distinguishable from *Newburn* and *Wederski* for three reasons. First, the state argues that, because the prosecutor's statements were made during *voir dire*, they differ from those in *Newburn* and *Wederski*, which, according to the state, were "made during closing arguments that were expressly directed at the evidence presented at trial." Second, the state argues that the statements did not suggest that "the state possessed *incriminating* evidence," just "inadmissible evidence." (Emphasis in original.) And, third, the state argues that the statements were not improper because the prosecutor also told the jury that it was "not allowed to speculate."

The state's arguments are unavailing. As discussed above, the prosecutor's statements in this case are very similar to those in *Newburn*. They do not differ in any meaningful way. And, although the statements in this case may not have been as blatant as those in *Wederski*—where the prosecutor pointed to a person in the courtroom and indicated that the person was a handwriting expert whom the state could have called as a witness if the defendant had denied that the handwriting on the stolen checks was his—they were still improper. The basic rule from both *Newburn* and *Wederski* is that the state may not suggest that the rules of evidence prevent it from presenting all its evidence to the jury, and, here, the prosecutor's statements violated that basic rule.

The state's arguments about the differences between this case and *Newburn* and *Wederski* do not lead to a different conclusion. Contrary to the state's first argument, it does not matter that the prosecutor made the statements during *voir dire*. Such statements are improper at any point in a trial. *Pinnell*, 311 Or at 108 (holding that prosecutor's reference to defendant's criminal history during *voir dire* was

error). And, as this case illustrates, when such statements are made during *voir dire*, they can prejudice a defendant by preemptively providing an explanation for the state's later failure to produce evidence that the jury might expect it to produce. As described above, defendant argued that the state had failed to carry its burden of proving the alleged harassment because it had failed to gather and present video that would have shown whether the alleged harassment actually had occurred. The prosecutor's statements during *voir dire* provided the jury with an alternative (but inaccurate) explanation for the state's failure to present video of the alleged harassment.

And, contrary to the state's second argument, because the state is the plaintiff in a criminal case, a prosecutor's suggestion that the state has more evidence than it can present will likely be understood as a suggestion that the state has more *incriminating* evidence than it can present. Indeed, in *Newburn*, this court held that the prosecutor's statement that "'out of all of the facts in the District Attorney's office that we may have, we can only present such evidence as is admissible,'" injected "extrinsic and prejudicial matter" into the trial, even though the statement did not identify particular facts that the prosecutor could not present.[4]

Finally, contrary to the state's third argument, it is improper for a prosecutor to suggest that the state has more evidence than it can present even if the prosecutor also tells the jury that it is "not allowed to speculate." A suggestion that the state has more evidence than it can present is an "open invitation for the jury to speculate," *Wederski*, 230 Or at 61, and making such a suggestion and then telling the jury not to speculate is, at best, inconsistent. It is akin to telling jurors "not to think of a white bear." *Lakeside v. Oregon*, 435 US 333, 345, 98 S Ct 1091, 55 L Ed 2d 319

---

[4] Other jurisdictions also have held that general references to information outside the evidentiary record are improper. *See, e.g.*, *Commonwealth v. Bolden*, 227 Pa Super 458, 323 A2d 797 (1974) (prosecutor's argument that there were "certain things" about the case that the prosecutor could not tell the jury was improper, even though the comment "did not refer to any particular factual matter," because the "implication is clear that there existed other incriminating or sinister facts which either were not admissible or could not be produced").

(1978) (Stevens, J., dissenting) (using the example to illustrate the harm of referring to inadmissible evidence, even when telling jurors not to think about it).

Moreover, in connection with telling the jurors that they would not have all the facts, the prosecutor told the jurors that the "only" facts that they were to "think about in trial" were the "facts that are presented." That statement could have caused jurors to believe that they were not to think about the missing video at all, but that belief would have been incorrect because jurors can draw reasonable inferences from a party's failure to present evidence "[w]hen it would be natural under the circumstances" for the party to present that evidence. *Cler*, 349 Or at 489 (internal quotation marks omitted); *see also State v. Mims*, 36 Or 315, 323, 61 P 888 (1900) (holding that prosecutor could comment on defendant's failure to call witnesses who would have been in a position to observe an injury defendant claimed to have suffered); *State v. Lincoln*, 250 Or 426, 427, 443 P2d 178 (1968) (holding that prosecutor could comment on defendant's failure to call available witnesses).

Thus, we conclude that, contrary to the state's arguments, the prosecutor's statements in *voir dire* were improper and the trial court erred in overruling defense counsel's objections to them. Accordingly, we turn to the state's alternative argument: that the error was harmless.

When determining whether an error was harmless, the dispositive question is whether there is "little likelihood that the error affected the jury's verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (construing Or Const, Art VII (Amended), § 3, which requires this court to affirm trial court judgments, notwithstanding an error in the trial, if this court is of the opinion "that the judgment of the [trial court] was such as should have been rendered").

In this case, we cannot conclude that the trial court's error was harmless. The prosecutor's statements during *voir dire* suggested that the state had additional evidence against defendant that had been excluded under the rules of evidence. The prosecutor introduced the statements by telling the prospective jurors that there was something she wanted them to "keep in mind throughout the trial."

She then told them—three times—that there were "things" and "facts" that would not be presented at trial. And, when defense counsel objected to the statements, the trial court overruled his objections. In doing so, the trial court "accentuated the error." *Newburn*, 178 Or at 241. From the jury's perspective, the prosecutor's statements "appear[ed] to have received the trial court's imprimatur." *Cler*, 349 Or at 491. In addition, the trial court refused defense counsel's request for a curative instruction. Like the trial courts in *Newburn* and *Wederski*, it failed to tell the jury to disregard the prosecutor's statements. Consequently, the statements were "approved, so far as the jury knew, by the court's silence." *Wederski*, 230 Or at 61.

As mentioned, the prosecutor's statements were prejudicial in two ways. First, because they suggested that there was evidence beyond that which would be presented at trial, they encouraged speculation. Second, because they suggested that the reason the evidence would not be presented was because it had been excluded under the rules of evidence, they provided a preemptive explanation for the state's failure to present evidence that the jury might expect it to present. The prejudice was significant because it related to a central issue in the case: the absence of video of the alleged harassment. The prosecutor's statements created a risk that jurors would infer that the state had video of the alleged harassment but could not present it because of the rules of evidence. The statements also created a risk that jurors would believe that they could not take the state's failure to present the video into account, which would undercut part of defendant's defense.

Moreover, the jury's questions show that the jury was concerned about the missing video. The jury asked if the prosecutor knew whether video of the alleged harassment existed and, if so, whether the prosecutor was required to show it at trial. The prosecutor's statements during *voir dire* created a risk that the jury would resolve those questions in the state's favor based on a belief that the prosecutor had the video, but it was not admissible under the rules of evidence. And, the court's answer to the jury's questions—"you have been provided the admitted evidence in this case"— may have increased that risk.

Nevertheless, the state argues that the prosecutor's statements were harmless for three reasons, which we address in turn. First, the state argues that the prosecutor's statements were harmless because they were "brief" and "occurred before the evidentiary phase of the trial had begun." To the extent the state is arguing that the statements would not have drawn much attention, that suggestion is contradicted by the record, which, as just described, shows that the prosecutor repeated the statements several times over defense counsel's objections and with the trial court's apparent approval. And the fact that the statements were made during *voir dire* did not render them harmless; to the contrary, the timing of the statements enabled them to serve as preemptive explanation for any evidentiary gaps in the state's case, including the missing video, which—as the jury's questions show—was a concern during the jury's deliberations.[5]

Second, the state argues that the prosecutor's statements were harmless because the prosecutor "did not capitalize" on them because she "did not discuss" the video. That argument is inapposite. It is not surprising that the prosecutor chose not to discuss the video at trial because the video did not aid the state's case; instead, the video highlighted a gap in the state's evidence because it did not show the alleged harassment.

Third, the state argues that the prosecutor's statements were harmless because the trial court gave the jury standard instructions, including instructions regarding how the jury was to make its factual findings. As described above, the court told the jury, "As [the] judge, I'm [the] gatekeeper regarding evidence. I determine what the law allows to be evidence. In effect, the law considers anything that is not in evidence to be unreliable. That is why we do not consider non-evidence in deciding the facts." The court also told

---

[5] In arguing that the prosecutor's statements were harmless because they were made during *voir dire*, the state relies on *State v. Evans*, 344 Or 358, 182 P3d 175 (2008). But *Evans* involved a statement by a prospective juror about an unrelated matter, whereas this case involves a statement by the prosecutor about the evidence that was going to be presented at trial. And, the issue in *Evans* was whether the trial court erred by denying a mistrial motion, which is reviewed for an abuse of discretion and involves a different standard than the harmless error inquiry.

the jury, "You may draw reasonable inferences from the evidence but you're not to guess or speculate." The state argues that the instructions cured any prejudice caused by the prosecutor's statements. We disagree. The instructions did not tell the jury to disregard the prosecutor's statements. They did not counter the prosecutor's suggestion that the state had evidence that had been excluded because of the rules of evidence, a suggestion that undercut part of defendant's defense. And they stated that anything that was not in evidence, which would include any video of the alleged harassment, was unreliable.[6]

Moreover, this court rejected a similar argument in *Cler*. In that case, the defendant told the jury, over the plaintiff's objections, that it had an expert witness that it could have called, but for a scheduling problem. 349 Or at 486. The trial court gave the jury "the standard instructions that it must decide the case based on the evidence (testimony and exhibits) presented at trial and that counsel's opening statements and closing arguments are not evidence." *Id*. On review, the plaintiff argued that the trial court had erred in overruling its objections, and the defendant responded, in part, that even if the trial court had erred, the error was harmless because of the trial court's instructions. This court rejected that argument, noting that OEC 103(3) "deters the suggestion of inadmissible evidence to the jury by any means, including through counsel's statements," and does not "somehow authorize that sort of conduct" if the trial court gives the jury standard instructions. *Id*. at 493.

Thus, we conclude that the prosecutor's improper statements during *voir dire* were not harmless. Because they suggested that the state had additional evidence against defendant that it could not present, they were prejudicial. In addition, they were prominent, related to a central issue in the case on which the jury was focused, and undercut a part of defendant's defense.

---

[6] As mentioned, the trial court's instructions were based on UCrJI 1004, which states, "In effect, the law considers anything that is not evidence to be unreliable; that is why you many not consider nonevidence in deciding the facts." We note, however, that evidence may be excluded for reasons other than whether it is reliable.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.