No. 407 May 7, 2025 373

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

OMAR ADNAN ALATTAR,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR46279; A180126

Melvin Oden-Orr, Judge. (Judgment entered July 22, 2022)

Adrian L. Brown, Judge. (Judgment entered October 31, 2022)

Argued and submitted September 24, 2024.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Armstrong, Senior Judge.

KAMINS, J.

Conviction on Count 1 reversed and remanded for further proceedings; remanded for resentencing; otherwise affirmed.

**KAMINS, J.**

Defendant raises four assignments of error following two different trials related to a single underlying event, in which he visited a mental health treatment facility and refused to leave while holding a BB gun that resembled a Glock pistol. For that conduct, defendant was charged with menacing and criminal trespass. At defendant's first trial, he was convicted of criminal trespass, but the jury failed to reach a verdict on a count of menacing. The state retried the case on menacing and defendant was convicted of that offense at the close of that trial. On appeal, he assigns four errors between the two trials, contending that the trial court erred: (1) in admitting his request for a letter to purchase a firearm from his psychotherapist; (2) by *sua sponte* instructing the jury about the burden of proof following his closing argument; (3) by allowing the prosecutor to ask prospective jurors about limitations on the admission of evidence during *voir dire*; and (4) by limiting defendant's closing argument to 40 minutes. We agree with defendant that the trial court erred in admitting his request to his psychotherapist and conclude that the error was not harmless.[1] Consequently, we reverse the conviction for menacing and remand for further proceedings.

As a part of its case in chief, the state sought to introduce evidence that defendant requested a letter (the request) from his psychotherapist, W, which would state that he should be allowed to purchase a firearm. Defendant moved to exclude the request, contending that, among other things, it was privileged under the psychotherapist-patient privilege. *See* OEC 504 (excluding confidential communication between a psychotherapist and patient if that communication was made for the purposes of diagnosis or treatment). The trial court determined that, although defendant and W had a qualifying therapeutic relationship, the request was not a confidential communication because defendant intended to share that request "publicly in some way [to] purchase a firearm," severing confidentiality. The court also determined that, even if the request was confidential, it was

---

[1] That determination obviates the need to address defendant's second and fourth assignments of error as both are unlikely to arise on remand.

not made for the purposes of diagnosis or treatment because it "wasn't an ongoing discussion." The court observed that "while certainly interactions can include treatment goals, here it was not in [W's] estimation, an ongoing discussion. And it certainly wasn't made for diagnosis."

In his first assignment of error, defendant challenges that ruling, arguing that the request was "an entirely separate communication between himself" and W and that the request was "reasonably related to his treatment." "We review for errors of law the trial court's determination that no privilege applied in this case." *State v. Langley*, 314 Or 247, 263, 839 P2d 692 (1992). The burden rests with defendant to prove that the communication was privileged. *State v. Miller*, 300 Or 203, 209, 709 P2d 225 (1985).

Defendant must be a "patient," and W must be a "psychotherapist" as defined in OEC 504 in order for the privilege to apply, a requirement that the state contends is not met. A patient is "a person who consults or is examined or interviewed by a psychotherapist." OEC 504(1)(b). A psychotherapist is "a person who is *** [l]icensed, registered, certified or otherwise authorized *** to engage in the diagnosis or treatment of a mental or emotional condition." OEC 504(1)(c).

Defendant was a "patient" because he regularly sought treatment from W. And W was a psychotherapist because she was certified as a Qualified Mental Health Associate and treated defendant. In arguing to the contrary, the state contends that W is not a psychotherapist because she "is not a diagnosing clinician." However, OEC 504 does not limit the definition of a psychotherapist to only a "diagnosing clinician"; rather, it provides that a "psychotherapist" is a person who is "authorized to engage in diagnosis or treatment of the patient's mental or emotional condition (or reasonably believed by the patient so to be)." *Miller*, 300 Or at 210. It is undisputed that W treated defendant's mental health condition. Accordingly, she was a psychotherapist, and defendant was her patient for purposes of OEC 504.

Defendant must also prove that the communication was confidential. *See* OEC 504(1)(a) (explaining generally that "'[c]onfidential communication' means a communication

not intended to be disclosed to third persons"). In conclud-
ing that the communication was not confidential, the trial
court determined (and the state argues on appeal) that the
request "show[ed] this desire to publicly in some way [to]
purchase a firearm." However, the evidence was a *request* for
a letter and not a physical letter itself. That request would
not be relayed to third parties; rather, the request was only
made to W during a therapy session. If the answer to defen-
dant's request was "no," he would not expect that informa-
tion to be made public because he would not be able to use
it to purchase a firearm, and W testified that she assured
defendant that all communications between the two of them
were confidential. *See Miller*, 300 Or at 210 (observing that
"[w]hether there is an intent to avoid disclosure of" a confi-
dential communication "may be inferred from the circum-
stances"). Accordingly, the trial court erred in determining
that the request was not confidential.

Lastly, defendant had to demonstrate that the
request was "made for the purposes of diagnosis or treat-
ment." OEC 504(2). "The purpose of the communication,"
including its diagnostic or treatment purpose, considers the
patient's intent. *Miller*, 300 Or at 210. A "patient's reasonable
belief that the communication is being made for the pur-
poses of diagnosis or treatment will suffice," and that intent
"may be inferred from the surrounding circumstances." *Id.*;
*see also United States v. Romo*, 413 F3d 1044, 1047 (9th Cir
2005) (observing that "we pay special attention to the partic-
ulars of the meeting during which the allegedly privileged
information was exchanged").

The trial court concluded that the request was an
"interaction," that W did not perceive it to be an "ongoing
discussion," and it was therefore not related to defendant's
treatment. However, the surrounding circumstances indi-
cate that defendant's request was raised in the context of
his treatment. W and defendant met weekly for therapy
sessions. W testified that, over the course of their thera-
peutic relationship, she and defendant discussed different
skill-building exercises, his goals, and how he can achieve
those goals. W testified that "everything somehow would be
tied into *** some sort of treatment goal," even if she and

defendant had only a "brief interaction." She also explained that "all interactions between a patient and the clinician are confidential." It was within the confines of that therapeutic-patient relationship in which defendant's request for help with his ability to obtain a firearm (*i.e.*, his treatment goal) occurred. Indeed, defendant made the request while defendant was in an active therapy session with W. Given those circumstances, we cannot say that the request was not made in the course of defendant's treatment. *See Miller*, 300 Or at 214 (citing *State v. Steelman*, 120 Ariz 1213, 585 P2d 1213 (1978) for the proposition that "where a patient is examined believing the purpose to be treatment, the patient has a right to rely upon the confidence imposed in the physician"); *United States v. Hardy*, 640 F Supp 2d 75, 79 (D Me 2009) (rejecting the government's "too narrow[]" argument that the defendant's threatening statements to kill politicians during his therapy sessions were not made in the course of diagnosis or treatment).

We do not think—nor does the state argue—that the trial court's admission of the request was harmless. *See State v. Davis,* 336 Or 19, 32, 77 P3d 1111 (2003) (explaining that we will affirm the judgment despite evidentiary error if there was "little likelihood that the error affected the jury's verdict"). The state made the request a key part of its case, mentioning it during its opening statement, and relying on it during its closing argument to prove defendant's motive and intent. *Id.* at 34; *see also State v. Bement,* 363 Or 760, 779, 429 P3d 715 (2018) (observing that an "evidentiary error is more likely to influence a verdict if the error relates to a central factual issue" in a case (internal citations omitted)). Accordingly, we reverse defendant's conviction for menacing.

Defendant's third assignment of error relates to his first trial in which he was convicted of second-degree criminal trespassing, ORS 164.245. He contends that the trial court legally erred by not sustaining his objection to the prosecutor's statement during *voir dire* that there might be another "piece of information that because of the rules of the court can't be presented to the jury." *See State v. Banks*, 367 Or 574, 587, 481 P3d 1275 (2021) (reviewing for legal error and recognizing the "basic rule" that "the state may

not suggest that the rules of evidence prevent it from presenting all its evidence to the jury"). After reviewing the record, we conclude that the trial court's two tailored curative instructions remedied any harm defendant may have suffered. *Cf. State v. Camirand*, 314 Or App 791, 800-01, 499 P3d 154 (2021) (concluding that the trial court's error was not harmless because it only provided "generic instructions" to remedy the prosecutor's error).

Conviction on Count 1 reversed and remanded for further proceedings; remanded for resentencing; otherwise affirmed.