750 June 24, 2025 No. 24

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

JAYSON HARRISON BURTON,
*Petitioner on Review.*

(CC 18CR78018) (CA A177214) (SC S070441)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 14, 2024.

Daniel C. Bennett, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Lauren P. Robertson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

MASIH, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____
* On Appeal from Washington County Circuit Court, D. Charles Bailey, Jr., Judge.326 Or App 815 (2023) (nonprecedential memorandum opinion).

**MASIH, J.**

This criminal case involves statements made by defense counsel during closing argument that the trial court ruled were improper. Prior to defendant's arrest on charges of second-degree sexual abuse and third-degree rape, law enforcement had a phone interview with him, during which he made no admissions. The state did not introduce evidence of that phone call during its case-in-chief at defendant's trial, and the prosecutor assumed that the state's failure to do so precluded defense counsel from asking about the call on cross-examination. During closing arguments, defense counsel did not specifically mention the phone call, but did refer three times to the lack of evidence about any interview with, or admissions by, defendant. The state objected each time, and the court sustained the first two objections, but did not rule on the third. After the third objection, the court told defense counsel—outside the jury's presence—that counsel was not permitted to say that no interview had occurred but could refer to the absence of any evidence of admissions by defendant. After defense counsel tried a fourth time to refer to the absence of evidence of any police interview—and again, the state objected—the court sustained that objection and instructed the jury, *sua sponte*, that they should not speculate about whether any interview had occurred and that whether any interview had occurred was "not important" for them to know.

The jury found defendant guilty on both charges, and he appealed, contending that the trial court had erred in sustaining the state's objections and that the court's *sua sponte* instruction had been an improper comment on the evidence. The Court of Appeals affirmed, concluding that the trial court had not abused its discretion in sustaining the objections and that defendant had not preserved his argument as to the jury instruction. *State v. Burton*, 326 Or App 815 (2023) (nonprecedential memorandum opinion). For the reasons explained below, we conclude that, although the trial court did not err when it sustained the state's objection to defense counsel's first statement, it did err in sustaining the state's objection to defense counsel's fourth statement.

However, we conclude that the error was harmless.[1] In addition, although we agree that the court's *sua sponte* jury instruction could have been worded more carefully, defendant did not preserve his argument that the instruction was an improper comment on the evidence, and we therefore decline to reach the merits of that issue. Accordingly, we affirm the decision of the Court of Appeals.

## I.   FACTS AND PROCEDURAL BACKGROUND

The charges against defendant arose from allegations that, at a hotel in Hillsboro, Oregon, he had had sexual intercourse with his then-girlfriend's daughter, Z, who was 14 years old at the time. The incident was reported to officials in King County, Washington, where Z and her mother lived, and the report was later forwarded to the Hillsboro Police Department. Detective Gay was assigned to investigate, coordinating with detectives from the King County Sheriff's Office, including Detective Gerlitz. Detective Gay had difficulty locating defendant, but eventually spoke with him once over the phone. Defendant did not make any admissions during that conversation. Ultimately, the state charged defendant with one count of second-degree sexual abuse, ORS 163.425, and one count of third-degree rape, ORS 163.355, and the case proceeded to trial.

During opening statements, the prosecutor told the jury that they would be hearing testimony from numerous witnesses, including law enforcement. Defense counsel then told the jury that they would hear about a phone call between law enforcement and defendant:

"You'll also hear testimony from law enforcement. They attempted to interview [defendant] and what you're going to hear from law enforcement is that [defendant] made no admissions. None. This was what we would call a pretext call and I think that you can surmise from the evidence that they wanted to lure [defendant] into making admissions that he had sexually assaulted this young girl.

"There were no admissions. None."

---

[1] As we will discuss in more detail later in this opinion, we need not resolve any issues pertaining to defense counsel's second or third statement. Defendant concedes that the second statement was withdrawn, and the trial court never issued a clear ruling on the prosecutor's objection to the third statement.

After opening statements, the court excused the jury to consider a defense motion to dismiss for improper venue. Detective Gay testified for the state about the propriety of venue. During cross-examination, defense counsel asked Detective Gay if she had attempted to interview defendant, and she answered yes. Defense counsel then asked whether defendant had "admit[ted] to [Detective Gay] that something happened" in Hillsboro, to which Gay responded, "He didn't admit to anything, no." The trial court denied defendant's motion to dismiss for improper venue.

At the beginning of the second day of trial, and again outside the jury's presence, the prosecutor brought up defense counsel's reference in his opening statement to a "pretext" phone call and explained that the state did not intend to play its recording of the call or present any evidence about the call, including any statements that defendant had made. The prosecutor continued, asserting that "the only avenue, essentially, for those [statements] to come out is if the State brings them out. And so[,] with Detective Gay on the stand, if I don't ask her about those, they can't ask her about those statements, about that conversation." In other words, the prosecutor took the position that, if the state presented no evidence of a phone call, then defense counsel could not ask Gay during cross-examination whether defendant had made any admissions during any such call.[2] The trial court explained that it understood the prosecutor to be arguing that the statements would be inadmissible because they were not party-opponent admissions. Defense counsel stated that, if the state did not raise the issue, he would not either. The court withheld any ruling, noting that it did not "make decisions in a vacuum" and that "[t]hings can unfold far differently than people anticipate and I'll make my call on that."

During trial, the jury heard testimony from Z, Gerlitz, Gay, and Z's mother, as well as a recording of Gerlitz's interview of Z. On direct examination by the state, Gay testified about her overall investigation, including that it had been difficult to locate defendant, but the prosecutor did not ask her about her phone call with defendant. On

---

[2] As we discuss later in this opinion, the prosecutor's assumption that defense counsel would be precluded from asking Gay about that conversation altogether was likely incorrect. *See* 373 Or at 764-65.

cross-examination, defense counsel also did not ask Gay about the phone interview but did ask about other aspects of the investigation, including what steps she had taken to verify the truthfulness of Z's story. During that questioning, Gay acknowledged that she had not verified the hotel records until the day of her testimony, had not found any witnesses to the incident, and had not looked for or found any video from that time that might have showed defendant and Z together. Defendant did not testify.

Defendant's theory at trial was that the allegations had not been adequately investigated and, therefore, the state had not proved his guilt beyond a reasonable doubt. Defense counsel's closing argument criticized the thoroughness of the state's investigation. In support of that argument, defense counsel stated:

> "You heard the prosecutor acknowledging no DNA, no hospital records, no immediate reporting, no rape kit, nothing. No police investigation until much later in time.

> "* * * * *

> "This could have been a more thorough investigation. Law enforcement, we heard them today. They could have investigated in a way that would have been extremely persuasive in terms of did this crime happen or not. Don't have much from law enforcement, right? * * *

> "So, when you pull all of this together, let's look at the different kinds of evidence or information you have. [Z] admitted there were things that she didn't say. So, you have missing information, there's no doubt about that. So you have information * * * that comes in, that's not corroborated, that really is important. And [defendant] has exercised his right to not testify and as I suggested to you (inaudible) the only people that really know what might have happened or didn't happen would be [defendant] and you didn't hear from him. That's his right.

> "So, you're trying to figure out what happened without [defendant]. *What you also didn't hear was reports by law enforcement about their attempt to interview [defendant]. So, one of two things might have happened. Maybe he wasn't investigated. We don't know. We didn't hear any testimony about that. It's certainly leaning to * * *[.]*"

(Emphasis added.) At that point, the state objected. The trial court sustained the objection on the ground that defense counsel's argument assumed facts not in evidence.

Defense counsel then tried to rephrase, asking, *"Did you hear any of the investigators say[, ']I spoke to [defendant]?['] The answer is no."* (Emphasis added.) Again, the state objected. The trial court sustained the objection, and defense counsel withdrew that statement.

Defense counsel then rephrased again, stating, *"So, we have no admissions."* (Emphasis added.) The state objected a third time, and the court asked the jury to leave the courtroom without ruling on the objection.

Outside the jury's presence, the state contended that defense counsel was arguing facts not in evidence because he was arguing that defendant had not spoken to law enforcement, when, in fact, he knew that defendant had spoken to Detective Gay and that the state had chosen not to present evidence of that interview. The trial court responded that "there's a difference between whether or not [defendant] was interviewed and whether or not [the jury] heard any testimony regarding any admissions." The court continued that it would allow defense counsel to argue to the jury that none of the officers had testified about any admissions made by defendant, but that counsel could not state that there had been no investigation or interview. The court explained its reasoning as follows:

"THE COURT:   I'd allow him to [state] that none of the officers testified to any admissions. If you want to go back[,] *** [defense counsel] didn't ask [the detectives] any questions about whether or not they had any interview, you can't speculate as to whether or not there [were] any interviews of him or not. You can certainly be sure that if there was anything favorable for them, [defense counsel] would have probably tried to bring it in. It's a slippery slope, that's why *** if we keep it to 'you didn't hear any testimony from the officers—[']

"[PROSECUTOR:]   Right.

"THE COURT:   [']—of any admissions,['] I'm good with that, because I think that's—

"[PROSECUTOR:]   Right. I have concerns—

"THE COURT:   —likely factually—

"[PROSECUTOR:]   —with him saying that there was not an investigation and he was not—

"THE COURT   Different.

"[PROSECUTOR:]   —interviewed, that's a—

"THE COURT:   Different.

"[PROSECUTOR:]   —different—

"THE COURT:   That part *** is why I sustained it. The second one is why I didn't make a decision until we at least had the jury go out. I think it's fair for him to say none of the officers testified to any admissions made by his client.

"[DEFENSE COUNSEL:]   Okay.

"THE COURT   Because we do know he's interviewed and I think that's factually correct that it's not—so that's—

"[DEFENSE COUNSEL:]   (Inaudible.)

"THE COURT:   —that's fair game for you. Just be careful—

"[DEFENSE COUNSEL:]   I will.

"THE COURT:   —how you do it[.]"

In sum, the court explained that defense counsel could state to the jury that neither officer had testified about any admissions from defendant but could not state that no investigation or interview had occurred. Both defense counsel and the prosecutor stated that they understood.

Immediately after that discussion, the following exchange occurred in front of the jury:

"THE COURT:   [Defense counsel], you may continue.

"[DEFENSE COUNSEL:]   Thank you.

"*You didn't hear from the law enforcement witnesses that they had interviewed [defendant]. You just didn't hear that.*

"[PROSECUTOR:]   I object, your honor.

"THE COURT:   Sustained. Just—

"[DEFENSE COUNSEL:]   Let me—

"THE COURT:   Ladies and gentlemen, I don't want you \*\*\* speculating about whether there were, or not, any interviews. Certainly, it was not raised. *And it's not important for you \*\*\* to know if there was or was not any interviews done of the defendant in this particular case.*

"\*\*\* [R]egarding the argument, it's only argument and so that's all [they] are. They're not facts to be presented to you all. But I don't want you \*\*\* speculating whether there were or were not any interviews done by the defendant."

(Emphases added.) Defense counsel did not object to the court's instruction and continued his argument without further reference to the detectives' testimony. During rebuttal closing argument, the prosecutor focused on the evidence that the state had presented, asking the jury to base its verdict on the evidence, which in this case was witness testimony that the prosecutor argued was uncontroverted. The jury found defendant guilty on both charges. The court merged those guilty verdicts and convicted defendant of a single count of sexual abuse in the second degree, ORS 163.425.

Defendant appealed, raising two assignments of error. First, he argued that the trial court had erroneously limited defense counsel's closing argument when it sustained the state's objections that defense counsel was asserting facts not in evidence because his counsel's argument had been a proper invocation of the "missing witness" or "missing evidence" inference. The Court of Appeals disagreed, concluding that the trial court had acted within its discretion in controlling the scope of defense counsel's closing argument because counsel's argument had invited the jury to draw an inference that counsel knew to be false; that is, that law enforcement had not contacted defendant. *Burton*, 326 Or App at 819 (citing *United States v. Blueford*, 312 F3d 962, 968 (9th Cir 2002) ("It is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true. But it is decidedly improper for the government to propound inferences that it knows to be false, or has very strong reason to doubt[.]")).

Second, defendant argued that the trial court had impermissibly commented on the evidence when it instructed the jury *sua sponte* not to speculate about whether an interview had occurred and directed the jury that whether any such interview had occurred was "not important" for the jury to know. The Court of Appeals rejected that argument as unpreserved. *Id*. at 816. We allowed defendant's petition for review.

## II.   ANALYSIS

Defendant's arguments present two issues. The first issue is whether, during closing argument, a defendant can emphasize the state's failure to present certain evidence, where the inference that the jury might naturally draw from that failure is one that defense counsel knows has no good-faith support in the record. Relatedly, defendant invokes the "missing evidence" inference, and we consider whether that inference applies in this case. The second issue is whether, when the state decides not to present certain evidence, and the defendant then attempts to call attention to that fact during closing argument, the trial court may instruct the jury that the absence of the evidence is "not important." Because it will provide helpful context for our analysis of the specific questions presented, we begin by discussing some generally applicable principles regarding the permissible scope of closing argument.

### A.   *General Principles Regarding Closing Argument*

We generally review a trial court's decisions regarding control of jury argument for abuse of discretion. *R.J. Frank Realty, Inc. v. Heuvel*, 284 Or 301, 306, 586 P2d 1123 (1978). This court has explained that discretion "refers to the authority of a trial court to choose among several legally correct outcomes." *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000). Specific to criminal cases, a court's exercise of discretion may be informed by certain limitations that serve to protect the defendant's constitutional right to a trial by an impartial jury under Article I, section 11, of the Oregon Constitution and the right to a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States

Constitution. *State v. Banks*, 367 Or 574, 582, 481 P3d 1275 (2021).

We have also recognized that, in some cases, the exercise of discretion by the trial court "may be predicated on certain subsidiary determinations—either findings of fact or conclusions of law—that trigger their own standards of review." *State v. Hightower*, 361 Or 412, 421, 393 P3d 224 (2017); *see, e.g.*, *Charles v. Palomo*, 347 Or 695, 703-04, 227 P3d 737 (2010) (concluding that trial court erred in denying plaintiff the opportunity to present a rebuttal closing argument based on its misreading of ORCP 58 B(6)).

As to the permissible scope of jury arguments, this court has long recognized that trial counsel have "'a large degree of freedom' to comment on the evidence submitted" and to "urge the jury to draw any and all legitimate inferences from that evidence." *Cler v. Providence Health System-Oregon*, 349 Or 481, 487-88, 245 P3d 642 (2010) (quoting *Huber v. Miller*, 41 Or 103, 115, 68 P 400 (1902)). However, "that freedom is not without limitations." [3] *Cler*, 349 Or at 488. For instance, although counsel may be permitted to argue that a jury may draw certain inferences based on the evidence presented, counsel may not make abusive or highly inflammatory arguments, or appeal to the "passion and prejudice" of the jury, encouraging it to decide the case on an improper basis. *Id.* at 488 n 5 (citing cases following that principle); *see also Walker v. Penner*, 190 Or 542, 553, 227 P2d 316 (1951) (improper for counsel to make argument that is "highly inflammatory" and "only calculated to cause prejudice").

Another limitation on jury argument is that counsel may not refer to information outside the evidentiary record. *See State v. Oatney*, 369 Or 555, 569, 508 P3d 482 (2022) ("Arguments that urge the jury to draw legitimate inferences based on admissible evidence are generally acceptable; conversely, arguments that go beyond the admissible evidence generally are not."); *State v. Sperou*, 365 Or 121, 134, 442 P3d 581 (2019) (explaining rule in context of witness vouching and collecting cases); *State v. Pace*, 187 Or 498, 510, 212

---

[3] We discuss one such limitation with regards to instructing the jury on the law in *State v. Worsham*, 373 Or 739, __ P3d __ (June 24, 2025), also decided today.

P2d 755 (1949) (improper for prosecutor, in argument to the jury, to refer to statements that the defendant's wife had made to attorney before trial); *Tenny v. Mulvaney*, 8 Or 513, 521-22 (1880) ("Th[e] rule is * * * that counsel must confine themselves to facts in evidence."); *see also Trial*, 88 CJS § 298 (2024) ("Counsel must be confined to the issues and the evidence and will not be allowed to comment on or state facts not in evidence or within the issues."). That limitation is consistent with OEC 103(3), which provides that, in jury trials, "proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." *See Banks*, 367 Or at 585-86 (stating that OEC 103(3) applies to statements by lawyers); *see also Cler*, 349 Or at 490 (applying that limitation).[4]

Yet another limitation on jury arguments is that counsel may not suggest that they are aware of evidence

---

[4] The limitation that counsel may not refer to information outside the evidentiary record is also generally supported by Rule 3.4(e) of the American Bar Association's (ABA) Model Rules of Professional Conduct, which provides, in part, that a lawyer shall not "in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence." *ABA Model Rules of Professional Conduct*, Rule 3.4(e); *see also* Oregon Rule of Professional Conduct (RPC) 3.4(e) (to same effect). And it conforms to Standard 4-7.8(a) of the ABA *Criminal Justice Standards for the Defense Function* (2017), which provides:

"In closing argument to a jury (or to a judge sitting as trier of fact), defense counsel may argue all reasonable inferences from the evidence in the record. Defense counsel should, to the extent time permits, review the evidence in the record before presenting closing argument. Defense counsel should not knowingly misstate the evidence in the record, or argue inferences that counsel knows have no good-faith support in the record."

The standard has a corollary for prosecutors:

"In closing argument to a jury (or to a judge sitting as trier of fact), the prosecutor should present arguments and a fair summary of the evidence that proves the defendant guilty beyond reasonable doubt. The prosecutor may argue all reasonable inferences from the evidence in the record, unless the prosecutor knows an inference to be false. The prosecutor should, to the extent time permits, review the evidence in the record before presenting closing argument. The prosecutor should not knowingly misstate the evidence in the record, or argue inferences that the prosecutor knows have no good-faith support in the record. The prosecutor should scrupulously avoid any reference to a defendant's decision not to testify."

Standard 3-6.8(a) of the ABA *Criminal Justice Standards for the Prosecution Function* (2017).

that was not presented to the jury—thereby creating an invitation for the jury to speculate. *See, e.g.*, *Banks*, 367 Or at 589-90 (prosecutor's statements suggesting that additional evidence existed but had to be excluded under the rules of evidence encouraged speculation and were not harmless); *State v. Wederski*, 230 Or 57, 61, 368 P2d 393 (1962) (prosecutor's reference to evidence that the state "might have produced, but did not, was an open invitation for the jury to speculate in a manner which has been denounced by this court on several occasions"); *State v. Newburn*, 178 Or 238, 241-42, 166 P2d 470 (1946) (prosecutor's argument implying to the jury that the state had other inadmissible evidence that tended to show the defendant's guilt was improper and prejudicial to the defendant); *see also State v. Perez*, 373 Or 591, 619, __ P3d __ (2025) (Bushong, J., concurring) (stating that a prosecutor "should never suggest or insinuate that there is more evidence of the defendant's guilt than what the prosecutor has presented at trial" because doing so "amounts to either impermissible vouching, an implicit reference to facts not in evidence, or both").

Within the limitations on jury argument described above, counsel retain their ability to advocate freely on behalf of their clients. *Cf. Huber*, 41 Or at 115-16 ("[W]hen arguing within the limits of admitted or controverted facts[,] the counsel should enjoy the greatest latitude consistent with decorum and a reasonable ambition to succeed by honorable means.") In doing so, a defendant can comment on the state's failure to present evidence. That is because the presumption of innocence afforded to a defendant—and thus, the state's burden to overcome that presumption—is a "substantial part of the law," which requires the state "to establish every * * * element of the crime as charged." *State v. Rosasco*, 103 Or 343, 357, 205 P 290 (1922). And the burden rests with "the prosecution to prove [this] to the satisfaction of the trial jury, beyond a reasonable doubt." *Id.* That requirement is fundamental to the American justice system. *State v. Chitwood*, 370 Or 305, 317, 518 P3d 903 (2022). Therefore, in the context of a criminal trial, a defense argument that holds the state to its burden to "prove by evidence" that the defendant committed the crime charged, and points to the state's failure to meet that burden, is permissible. *Cf. Rosasco*, 103 Or

at 357 (explaining that, throughout trial, the burden of proof is "never shifted from the state to the defendant"). Such an argument falls within the "large degree of freedom" given to defense counsel to argue their case to the jury. *Cler*, 349 Or at 487 (internal quotation marks omitted).

With those general principles in mind, we turn to the first issue regarding the limits that the trial court imposed on defendant's closing argument.

B.  *Trial Court's Rulings Related to Defendant's Closing Argument*

As noted, defendant argues that the trial court erred when it limited the scope of his closing argument and prevented him from pointing out gaps in the state's evidence regarding an interview of defendant or any admissions made by defendant. Defendant specifically argues that the court's rulings were based on a misapplication of the "missing evidence" inference. In general, that inference provides that, "'[w]hen it would be natural under the circumstances for a party to call a particular witness * * * and the party fails to do so, tradition has allowed the adversary to use this failure as the basis for invoking an adverse inference'" that the testimony would have been unfavorable to the party. *Cler*, 349 Or at 489 (quoting 2 *McCormick on Evidence* § 264, 220 (6th ed 2006) (brackets in *Cler*)).[5] Thus, as defendant frames it, the issue is whether, under the "missing evidence" inference, it was permissible for defense counsel to point out the "gap" in Detective Gay's testimony—her failure to testify about any interview—and the state's failure to otherwise present evidence of the phone call with defendant. The state counters that the inference is not applicable and that the court's rulings represented a correct application of the well-established rule that a party may not comment on or state facts not in evidence. *See, e.g.*, *Huber*, 41 Or at 115 (counsel may not make "statements of facts outside the range of evidence").

---

[5] The inference may be called the "missing witness" or "missing evidence" inference, because it applies not only to testimony but also to a party's failure "to produce documents or other objects in his or her possession as evidence." 2 *McCormick on Evidence* § 264 (9th ed 2025). Because this case relates only to missing evidence, we refer to the inference as the "missing evidence" inference.

Both parties have presented extensive briefing and argument in this court regarding whether the "missing evidence" inference is applicable to this case. Although discussions of the "missing evidence" inference are often framed around counsel's arguments, the inference is an evidentiary principle.[6] When raised in the context of arguments, it requires the court to determine whether counsel is arguing a fact not in evidence—which is generally prohibited—or the absence of evidence that would be relevant to the issues in the trial, which may, in some circumstances, be permitted.

The "missing evidence" inference can be raised independently or in conjunction with defense counsel's arguments based on the burden of proof and presumption of innocence. *See, e.g.*, *Banks*, 367 Or at 581 (defense counsel, in closing argument, asserted that the state had failed to carry its burden of proof, and argued more specifically that the state had the power to request certain video evidence but that it had not produced it). However, as we will explain, we conclude that any invocation of the inference was not necessary in this case to permit defendant to point to the lack of evidence in the record of any interview or admissions. Such arguments, as noted above, are grounded in the presumption of innocence and a criminal defendant's general right to hold the state to its burden of proof. It does not require the application of the "missing evidence" inference.

We understand that defendant may have felt compelled to try to invoke the inference due to a belief that he was prohibited from cross-examining law enforcement about any interview with defendant. That belief may have

---

[6] "Historically, courts faced with the absence of a material witness turned for guidance to two doctrines:" the best evidence rule and the presumption against spoliators. Robert H. Stier, Jr., *Revisiting the Missing Witness Inference—Quieting the Loud Voice from the Empty Chair*, 44 Md L Rev 137, 139 (1985). Courts were willing to allow an adverse inference to be drawn for two primary reasons, based on those doctrines. *Id.* at 143. First, the courts "suspected the nonproducing party of concealing evidence, but because they could not show that unsavory act, they punished the would-be spoliators by depriving them of their supposed gain." *Id.* Second, the courts aimed to provide incentive for parties to come forward with evidence. *Id.* With those evidentiary principles serving as guideposts, the rule developed such that "the inference of unfavorable testimony from an absent witness became accepted as the general rule." *Id.* Our decision in *Banks* is a more recent example of the application of that principle in a criminal case. *See* 367 Or at 589 (applying principle to counsel arguments regarding missing video evidence (citing *Cler*, 349 Or at 489)).

been based on the prosecutor's argument that, "if I don't ask [Detective Gay] about [the phone call, defendant] can't ask her about those statements, about that conversation." However, the prosecutor's assumption—that defense counsel could not cross-examine Detective Gay about the interview if the prosecutor did not ask any questions about that part of the investigation—was likely incorrect.[7] Under OEC 611(2), "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." However, cross-examination "should not be limited to the exact facts stated on direct examination, but [may] extend[ ] to other matters which tend to limit, explain, or qualify them, or to rebut or modify any inference resulting therefrom, provided they are directly connected with the matter stated in the direct examination." *Ritchie v. Pittman*, 144 Or 228, 231, 24 P2d 328 (1933) (internal quotation marks omitted); *see State v. Wirfs*, 250 Or App 269, 275, 281 P3d 616, *rev den*, 352 Or 378 (2012) (explaining that OEC 611(2) maintains "[t]hat broad view of the scope of cross-examination"); *see State v. Cuevas*, 263 Or App 94, 104, 326 P3d 1242 (2014), *aff'd*, 358 Or 147, 361 P3d 581 (2015) (concluding that, where the adequacy of the investigation is challenged on direct examination, questions about the investigation are not beyond the scope of cross-examination); *see also* OEC 106 ("When part of an act * * * is given in evidence by one party, the whole on the same subject, where otherwise admissible, may at that time be inquired into by the other[.]").

Contrary to the prosecutor's argument, defense counsel's questions regarding Gay's interview with defendant likely would have been permissible so long as they were not seeking to introduce any statements that defendant had made but were instead focused on the circumstances of the interview and that defendant did not make any admissions. As we have just explained, because the prosecutor asked Gay questions on direct examination about her investigation as a whole, it would have then been permissible for defense

---

[7] The state has not provided any support for why the prosecutor's belief would be correct and, in arguing that the missing witness inference was not applicable in this instance, acknowledged that defense counsel could have, but chose not to, cross-examine Detective Gay when she was an available witness.

counsel to question Gay about the investigation as a whole, including the manner in which the interview had been conducted (such as whether by phone or in person), the length of the interview, and similar circumstances related to the interview.[8]

Additionally, as we will discuss in more detail below, the trial court also allowed defense counsel to argue to the jury that there had been no testimony about any admissions. It follows that defense counsel, in cross-examining Gay, could have asked her whether defendant had made any admissions during that interview, without asking her to relate any statements that defendant had made. And, as mentioned, because defense counsel is generally free to argue about the state's failure to present evidence—which is grounded in the fundamental presumption of innocence and the state's burden of proof—we conclude that, in this case, defense counsel was permitted to point to the lack of such evidence so long as the argument did not call for speculation or inferences that counsel knew had no good-faith support in the record.

We turn, therefore, to an examination of each challenged statement that defense counsel made during closing argument to determine whether each was within the bounds of permissible comments on the state's purported failure to meet its burden of proof and overcome the presumption of innocence. For convenience we list each of those statements:

1. "What you also didn't hear was reports by law enforcement about their attempt to interview [defendant]. So, one of two things might have happened. Maybe [defendant] wasn't investigated. We don't know. We didn't hear any testimony about that."

2. "Did you hear any of the investigators say ['] I spoke to [defendant]?['] The answer is no."

3. "So, we have no admissions."

---

[8] Alternatively, defense counsel could have recalled Gay as a defense witness and asked questions about whether she had interviewed defendant, and whether he had made any admissions during that interview. Or counsel could have asked the state to withdraw any "scope of direct" objection that it might have had regarding this line of inquiry in lieu of recalling Gay as a defense witness.

4. "You didn't hear from the law enforcement witnesses that they had interviewed [defendant]. You just didn't hear that."

Beginning with the first statement, the trial court sustained the state's objection to that statement on the basis that it assumed facts not in evidence. The Court of Appeals concluded that the trial court had acted within its discretion, not for that reason, but because defendant's argument had been misleading. Defendant argues that, because he had been unable to complete his entire statement, it was incorrect to conclude that he had intended to mislead the jury. While we agree with defendant that the record does not reflect his completed thought—which would have provided a better context for the inferences that he intended the jury to draw—the statements that *are* part of the record could have caused the jury to believe that it could affirmatively find that defendant had not been investigated *at all*, when there was no basis for that inference in the record. We agree with the Court of Appeals that counsel may not mislead the jury to draw inferences that have no good-faith support in the record.[9] For that reason, we conclude that the trial court did not err in sustaining the prosecutor's objection to defense counsel's first statement, as a means to protect against jury speculation or confusion.

The second statement—"[d]id you hear any of the investigators say [']I spoke to [defendant]?['] The answer is no[]"—was withdrawn by defendant. We therefore need not, and do not, discuss that statement any further.

The third statement—"So, we have no admissions[]"—was permitted, in part, by the trial court. As noted above, without ruling on the state's objection, the court

_____

[9] In reaching that conclusion, the Court of Appeals relied on *Blueford*, 312 F3d at 968. We acknowledge defendant's argument that defense counsel's statements in this case did not rise to the problematic level of the conduct of the prosecutor in *Blueford*. That case involved multiple acts of prosecutorial misconduct involving the late disclosure of tape recordings and false representations, questioning, and argument regarding the nature of the evidence on the recordings. And the Ninth Circuit also relied on the special duties and responsibilities of a *prosecutor*. However, as we indicate above, *see* 373 Or at 761 n 4, the ABA *Criminal Justice Standards for the Defense Function* also limit defense counsel from making arguments that call for inferences that counsel knows "have no good-faith support in the record." ABA Standard, *Defense Function*, 4-7.8(a).

conducted a discussion with counsel outside the jury's presence. Observing that defense counsel had not asked the law enforcement witnesses about whether they had interviewed defendant, the court drew a distinction between statements that "speculate as to whether or not there [were] any *interviews* of [defendant] or not" and those that point to lack of evidence of any "*admissions*." (Emphases added.) The court advised the parties that it was "fair for [defense counsel] to say none of the officers testified to any admissions made by his client," because, "we do know he [was] interviewed[,] and I think that's factually correct[.]" The court's reasoning gave defendant a fair opportunity to invoke the ultimate inference that he was seeking the jury to draw from the state's decision not to present evidence of the interview of defendant—that is, that, because the state had not presented evidence of admissions made by defendant, no such admissions existed. The court cautioned defense counsel to "keep it to 'you didn't hear any testimony from the officers' *** of any admissions[.]'" Defense counsel indicated he understood the court's "ground [rules]."[10]

However, once argument resumed, instead of pointing to the lack of evidence of any admissions, defense counsel returned to the lack of evidence of an interview, stating, "*You didn't hear from the law enforcement witnesses that they had interviewed [defendant]. You just didn't hear that.*" (Emphasis added.) At that point, the state objected again, and the trial court sustained the objection.

We note that, although defense counsel did not immediately turn to the lack of any evidence of admissions, the statement that defense counsel did make nonetheless correctly summarized the evidence that the jury had heard—*viz.*, that the law enforcement witnesses had not testified that they had interviewed defendant. Detective Gay testified about her overall investigation, including that it had been difficult to locate defendant, but the prosecutor did not ask about her interview with defendant, and Gay did not otherwise testify about any interview or statements made by defendant. The state made a tactical choice not to present that evidence, but only after defense counsel had already

---

[10] The trial court never clearly ruled on the state's objection.

referred to it in his opening statement, noting that defendant had made no admissions. And although defendant was entitled to cross-examine Detective Gay about her investigation, he was under no obligation to do so or to prove or disprove anything to the jury. To summarize, defense counsel was entitled to point accurately to an absence of evidence of any interview in making argument to the jury, especially when it was the state's choice to not introduce that evidence. And counsel's statement did just that: The statement reminded the jury that they "didn't hear from the law enforcement witnesses that they had interviewed [defendant]." That was a factual statement about the evidence, and, unlike defense counsel's first statement, which could have been understood to suggest that the jury could make a finding for which there was no good-faith support in the record, it simply pointed to the absence of evidence in the record. Therefore, the trial court erred when it sustained the state's objection to defense counsel's fourth statement to the jury.

Having concluded that the trial court erred in sustaining the state's fourth objection, we turn to the question of whether the court's error was harmless. Errors that have little likelihood of affecting a verdict are harmless and do not require reversal. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (framing inquiry for affirmance in criminal cases, despite error); *see also State v. Thompson*, 370 Or 273, 294, 518 P3d 923 (2022) ("Although an error occurred in the trial court, we will affirm if there is little likelihood that the particular error affected the verdict." (Internal quotation marks omitted.)). "In making a determination of harmlessness, the court does not ask whether the evidence of guilt is substantial or compelling, but rather whether the trial court's error was likely to have influenced the verdict." *State v. Henley*, 363 Or 284, 307, 422 P3d 217 (2018). In evaluating the harmlessness of the error, we consider both the nature and the context of the error. *Thompson*, 370 Or at 295 (citing *Davis*, 336 Or at 32-33). Here, the nature of the error is the limiting of defense counsel's statement to the jury that they had not heard any testimony that defendant had been interviewed. The context of the error is that the statement was part of defense counsel's overall argument to the jury that the state's investigation had been inadequate.

Defendant asserts that the trial court had "undercut [his] ability to defend himself" because his closing argument would have served two essential purposes: first, the argument would have supported the inference of his innocence, and, second, it would have explained why the presented evidence did not align with his opening statement. We recognize that the state's purportedly minimal investigation and the absence of any evidence in the record regarding a law enforcement interview with, or admissions by, defendant were core components of defendant's defense.

However, in his closing argument, defense counsel had been permitted to argue about "no DNA, no hospital records, no immediate reporting, no rape kit, nothing. No police investigation until much later in time." Additionally, the trial court had permitted him to proceed with statements relating to the additional inference to be drawn from the lack of evidence of an interview—that defendant had made no admissions. And the state, in its rebuttal closing argument, did not put law enforcement's phone interview or defendant's lack of admissions into issue; instead, it directed the jury back to the testimony that it had, in fact, heard, and argued generally that that testimony had not been disputed in any way. We conclude that the trial court's error had little likelihood of affecting the verdict, given the context of the arguments that defendant was permitted to— and did—make.

In sum, after reviewing the record and considering defense counsel's statement at issue, we are persuaded that the trial court's error was harmless. We therefore proceed to the second issue: the court's *sua sponte* jury instruction and whether defendant sufficiently preserved his argument as to that instruction.

C.   *Trial Court's Sua Sponte Jury Instruction*

Again, the trial court instructed the jury, *sua sponte*, that it was not to "speculat[e] about whether [there] were *** any interviews" with defendant because that fact was "not important." As noted, the Court of Appeals determined that defendant's argument was not preserved and therefore did not consider it. *Burton*, 326 Or App at 816. Before this

court, defendant acknowledges that he made no objection, but argues that the full exchange leading up to that instruction supports his argument that it was all part and parcel of defense counsel's attempts to call the jury's attention to the failure of the state to present evidence—something that he should have been permitted to do under the "missing evidence" inference—and that it would have been futile by that point for defense counsel to have lodged a further objection to the jury instruction. Defendant relies on case law explaining that our preservation requirements "do not demand that parties make what the record demonstrates would be futile gestures." *State v. George*, 337 Or 329, 339, 97 P3d 656 (2004); *see also State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990) ("When the trial court excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile.").[11]

We are not persuaded that it would have been futile for defendant to have taken exception to the trial court's *sua sponte* instruction or to have requested a supplemental instruction to mitigate any impact of the language used in the court's instruction. Based on the court's colloquy with counsel outside the presence of the jury, in which the court explained three times that defense counsel was permitted to argue that law enforcement had not testified about any admissions, it is apparent that the court was interested in giving defendant a fair opportunity to make his case by calling the jury's attention to the lack of admissions by defendant—the ultimate inference that defendant would have sought under the "missing evidence" inference.

As we said in *State v. Skotland*, "[s]ometimes, the winds of preservation can be gauged by looking to the weathervane of trial court surprise: Would the trial court be taken aback to find itself reversed *on this issue, for this reason*?" 372 Or 319, 329, 549 P3d 534 (2024) (emphasis in original). There, we noted that the record showed that the

---

[11] Defendant has not alternatively requested plain error review, and we therefore do not undertake that analysis in this case. *See Peeples v. Lambert*, 345 Or 209, 219, 191 P3d 637 (2008) ("The principal exception to preservation requirements is for so-called 'plain error'—that is, an error apparent on the record, about which there is no reasonable dispute.").

trial court thought that it had ruled in defendant's favor, and that, from that court's perspective, "once the prosecutor's closing argument then proceeded without objection from defendant, the Court of Appeals' subsequent reversal would have come out of the blue; objectively, the trial court had been given no reason to think that its ruling had been controversial, contested, or exceeded." *Id*. at 329-30. Here, as in *Skotland*, had defendant alerted the trial court to his concern that the court's instruction impermissibly commented on the evidence, we have no reason to think, based on the record before us, that the court would not have adequately addressed defendant's concern. We therefore decline to reach the merits of the second issue, relating to the trial court's *sua sponte* instruction.

### III.  CONCLUSION

In sum, we conclude that the trial court did not err in sustaining the state's objection to defendant's first statement because it improperly suggested to the jury an inference that could have been understood to suggest that the jury could make a finding for which there was no good-faith support in the record. However, we conclude that the court did err when it sustained the state's objection to defendant's fourth statement, but, because that error had little likelihood of affecting the verdict, it was harmless. Further, we conclude that defendant did not properly preserve his argument challenging the court's *sua sponte* jury instruction and thus decline to consider it. We therefore affirm defendant's judgment of conviction.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.