No. 7 January 29, 2026 783

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

KEONTA JARMEL STRAIN,
*Respondent on Review.*

(CC 21CR50723) (CA A179175) (SC S071112)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 28, 2025.

Jon Zunkel-deCoursey, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition for review and opening brief was Ellen F. Rosenblum, Attorney General; on the reply brief, Dan Rayfield, Attorney General. Also on the briefs was Benjamin Gutman, Solicitor General.

Matthew Blythe, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

MASIH, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

James, J., concurred and filed an opinion.

Bushong, J., dissented and filed an opinion.

_____
 * On appeal from Washington County Circuit Court, Beth L. Roberts, Judge. 332 Or App 79, 548 P3d 169 (2024).

**MASIH, J.**

In this criminal case, defense counsel commented in closing argument on the state's failure to present certain evidence, and the state responded that defense counsel could have elicited additional evidence on cross-examination. The issue in this case is whether the prosecutor's comments impermissibly suggested to the jury that defendant had a burden to elicit additional evidence through cross-examination of the state's witnesses. For the reasons explained below, we hold that the prosecutor's comments were impermissible and prejudicial to the defense. We therefore reverse the trial court judgment and affirm the Court of Appeals decision.

## I.   BACKGROUND

The following facts are undisputed for purposes of review. The charges against defendant arose from allegations that he had sexually assaulted H twice. Defendant and H had previously shared an apartment and had a sexual relationship. However, by the time of the alleged incident, they no longer lived together. H had moved back into her mother's house, and H alleged that the two sexual assaults occurred early one morning when defendant had stayed with her at her mother's house. H did not immediately seek medical attention, and she did not report the incident to law enforcement until approximately 12 days later. After reporting the incident, H met with Washington County Sheriff's Deputy Canning, who became the primary investigator on the case and helped H set up a pretext video call with defendant that Canning recorded. Ultimately, the state charged defendant with one count of first-degree sodomy, ORS 163.405, two counts of first-degree sexual abuse, ORS 163.427, two counts of second-degree sexual abuse, ORS 163.425, and one count of first-degree rape, ORS 163.375.

In its case-in-chief, the state presented testimony from H about the alleged sexual assaults. H testified that, immediately following the second assault, she had texted her friend, A, and told her what had happened with defendant. A then came over, and they spoke further about the incident. A also testified on behalf of the state over

defendant's objection.[1] A testified that H had contacted her after the incident, that they had talked about what had happened, and that H was sobbing during the conversation. The state did not introduce any text messages between the two at trial, and defendant did not cross-examine either A or H about them.

H also testified about her interactions with Deputy Canning, including that Canning had helped to set up the pretext video call with defendant. The state played the video recording of the pretext call, but it did not call Deputy Canning to testify.[2] On cross-examination, defense counsel questioned H about her alleged injuries and pain; her failure to seek immediate medical attention; the 12-day delay in reporting to law enforcement; and Canning's role as primary investigator, including with regard to the pretext video call.

During defendant's closing argument, defense counsel pointed out some perceived gaps in the state's evidence. In particular, as relevant to this appeal, defense counsel noted that, although H had testified on cross-examination that she had experienced "ten out of ten pain" for three days following the incident, she did not seek medical attention for at least 12 days, and the state had not presented any medical exam records or other evidence that substantiated her claims of injury. Defense counsel also argued to the jury that they had not seen any text messages between H and A "because they don't exist," and that, despite Deputy Canning being the lead investigating officer, "the [s]tate could not be bothered to bring that witness in" to testify and "stand up to cross-examination." The prosecutor did not object to any of those statements.

Instead, during his rebuttal argument, the prosecutor responded that "there was a big deal made about what I'll call the missing evidence." In response to defense counsel's

---

[1] Defendant objected to the state calling A as a witness on the basis that "her testimony is entirely hearsay" and would "invite[ ] vouching." The trial court ruled that it would allow the testimony for the limited purpose of establishing whether H had contacted A and describing H's demeanor during that conversation.

[2] Prior to trial, the state informed defendant that Canning had been placed on administrative leave and that it would not be calling her as a witness. Defendant subpoenaed Canning, intending to call her as an impeachment witness, but, ultimately, did not do so.

statement that the state had failed to produce the text messages because they did not exist, the prosecutor said that H had testified that she had talked to A and that defendant could have cross-examined A about what H had told her:

"You know [H] talked to [A], because [H] told you, and [A] came and told you. Did the defendant ever cross about that? No. Was there any cross-examination of [A] to inquire *what did [H] tell you and what didn't she tell you*—"

(Emphasis added.) At that point, defense counsel objected:

"[DEFENSE COUNSEL:]  Your Honor, I'm going to object to burden-shifting here.

"THE COURT:    Thank you. Your—you've open[ed] the door on this. Thank you."

The prosecutor then continued, without further objection:

"[PROSECUTOR:]  He cross-examined her. He could ask or not ask her. [H] didn't make it up. She talked to [A]. [A] came in and told you, 'Not only did she tell me that day what happened to her, but what was her demeanor like.'

"* * * * *

"The last thing was about in regard[] to Deputy Canning and something being hidden, because they didn't call Deputy Canning. *[H] is the one that needs to get on the stand and tell you what happened. The officer can't tell you what [H] said. [H] needs to tell you what was said and [H] \* \* \*came in \* \* \* and told you what happened. \* \* \* By the way, if there was something, again, there's cross-examination. You cross-examine [H] about stuff that (inaudible) [g]rand [j]ury was different. No cross-examination (inaudible) you told the officer anything that was different.* That's another red herring."

(Emphasis added.)[3]

_____

[3] The prosecutor had also commented on defendant's failure to cross-examine H about why she did not seek immediate medical attention for her alleged injuries, but defendant did not object to that statement. On appeal, defendant acknowledged that he did not preserve his assignment of error relating to that comment but argued that the error was plain and that the Court of Appeals should exercise its discretion to review it. *See* ORAP 5.45(1) (providing that appellate court may exercise its discretion to consider a plain error). The Court of Appeals did not reach that assignment of error, explaining that its decision to reverse and remand based on defendant's other assignments obviated the need to consider

The jury found defendant guilty of one count of second-degree sexual abuse and acquitted him of all other charges.

On appeal, defendant argued that the prosecutor's comments amounted to impermissible burden-shifting because they criticized defendant's failure to cross-examine the state's witnesses and invited the jury to speculate that defendant had more evidence than he was presenting to the jury.

The Court of Appeals agreed with defendant and reversed. *State v. Strain*, 332 Or App 79, 548 P3d 169 (2024).[4] The court first explained that the state's comments did not fall within the holding of *State v. Mayo,* 303 Or App 525, 531-32, 465 P3d 267 (2020), in which the Court of Appeals held that the state may comment on a defendant's failure to present or contradict evidence when the defendant is asserting an affirmative defense or the defense raises an issue on which the defendant bears the initial burden of production but fails to present any evidence. *Strain*, 332 Or App at 81-82.

The Court of Appeals also rejected the state's reliance on that court's earlier decision in *State v. Spieler*, 269 Or App 623, 346 P3d 549 (2015). The state had argued that, under *Spieler*, when the defense implies that the state has failed to present evidence that would have supported the defense or undermined the state's case, "the prosecutor can respond by noting that the defense ha[d] the ability to produce" that evidence. *Id.* at 642. The court rejected that argument, noting that, "unlike in *Spieler*, the prosecutor [in this case] did not argue that defendant could have produced the text messages or called the investigating officer to testify; instead, the prosecutor's statements targeted defendant's

_____

it. *State v. Strain*, 332 Or App 79, 81 n 1, 548 P3d 169 (2024). We too decline to consider that alleged error for the same reasons and do not discuss it further.

    [4] As we will explain in more detail below, the parties also disputed whether defendant's third assignment of error—pertaining to the lack of testimony from Deputy Canning—was preserved. The Court of Appeals concluded that it was, and we agree. *Strain*, 332 Or App at 80 (agreeing with defendant that, "because the trial court had once overruled [defendant's] objection to the prosecutor's argument that defendant failed to cross-examine a witness," another objection made by defense counsel on that basis would have been futile).

failure to cross-examine" certain witnesses. *Strain*, 332 Or App at 82. The court concluded that "any suggestion that defendant had the burden to prove that his version of the events was true through cross-examination amount[ed] to impermissible burden-shifting." *Id*. at 82-83 (citing *Mayo*, 303 Or App at 537). Determining that the errors were not harmless, the court reversed and remanded for a new trial. *Id*. at 83. We allowed the state's petition for review.

## II.   DISCUSSION

The question presented on review is whether the prosecutor, during rebuttal argument, was permitted to respond to defendant's argument about the absence of certain evidence by arguing that defendant could have elicited *other* evidence through cross-examination of the state's witnesses. The trial court determined that defense counsel's closing arguments had opened the door to such a response. A trial court's decisions regarding control of jury argument are generally reviewed for abuse of discretion. *R.J. Frank Realty, Inc. v. Heuvel*, 284 Or 301, 306, 586 P2d 1123 (1978). However, in a criminal case, a court's exercise of discretion is constrained by certain limitations that serve to protect the defendant's constitutional right to trial by an impartial jury under Article I, section 11, of the Oregon Constitution and the right to a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *State v. Banks*, 367 Or 574, 582, 481 P3d 1275 (2021).

The parties' arguments in this case implicate fundamental principles of a fair criminal trial, including a defendant's right to testify or not testify, confrontation and cross-examination of witnesses, the presumption of innocence, and the burden of proof. We begin with a general discussion of those fundamental principles as they relate to the holdings in the cases relied on by the parties. As we will explain, we conclude that it was impermissible for the state to comment on the defendant's failure to elicit additional evidence through cross-examination of the state's witnesses in a manner that was inconsistent with the proper allocation of the burden of proof.

A.   *Fundamental Principles of a Fair Trial*

The law presumes that every defendant charged with a crime is innocent and requires the state to prove every element of the offense beyond a reasonable doubt. *E.g.*, *State v. Burton*, 373 Or 750, 762, 571 P3d 736 (2025); *see also State v. Rosasco*, 103 Or 343, 357, 205 P 290 (1922) (explaining that "it devolves upon the prosecution to prove by evidence to the satisfaction of the trial jury beyond a reasonable doubt, that the defendant committed the crime charged in the indictment"); ORS 136.415 (providing that a criminal defendant is presumed to be innocent "until the contrary is proved" and entitled to acquittal "[i]n case of a reasonable doubt"). Thus, a defendant may "comment on the state's failure to present evidence" as part of holding the state to its burden of proof. *Burton*, 373 Or at 763.

A defendant has no obligation to testify. To the contrary, Article I, section 12, of the Oregon Constitution guarantees the privilege of the defendant to remain silent. *State v. Wederski*, 230 Or 57, 62, 368 P2d 393 (1962). Likewise, although a defendant may choose to cross-examine the state's witnesses, a defendant "[is] under no obligation to do so or to prove or disprove anything to the jury." *Burton*, 373 Or at 769; *see also Wederski*, 230 Or at 61 (a defendant has "no duty to prove or disprove anything," a not guilty plea "denie[s] everything," and a jury cannot draw any inferences "from the defendant's failure to contradict any evidence in the case"). That is so because the burden of proof "requires the state to establish every element of the crime as charged," and that burden never shifts to the defendant. *Burton*, 373 Or at 762-63 (internal quotation marks and ellipsis omitted).

An exception to that general rule arises when a defendant raises an affirmative defense. The law imposes the burden on a defendant to prove an affirmative defense by a preponderance of the evidence. ORS 161.055(2). In contrast, when a defendant raises a defense other than an affirmative defense, through written notice before trial or affirmative evidence by a defense witness in the defendant's case-in-chief, the state bears the burden of disproving that defense beyond a reasonable doubt. ORS 161.055(1) and (3).

Within that framework, "[w]hile it is expected that a prosecuting attorney will be zealous in [their] efforts to convict a defendant believed by [them] to be guilty of a crime, it must also be remembered that the prosecuting attorney, as a representative of the state, owes a primary duty to see that all criminal defendants receive a fair trial." *State v. Jones*, 279 Or 55, 63, 566 P2d 867 (1977). Thus, although a prosecutor has wide latitude to make arguments from the evidence, all of a prosecutor's arguments must comport with the constitutional protections afforded a criminal defendant at trial. *See Burton*, 373 Or at 759-60 (observing that a court's exercise of discretion regarding control of jury argument may be informed by the defendant's constitutional rights); *State v. Chitwood*, 370 Or 305, 316-17, 518 P3d 903 (2022) (concluding that prosecutor's argument incorrectly characterizing the reasonable doubt standard was improper); *State v. Perez*, 373 Or 591, 619, 568 P3d 940 (2025) (Bushong, J., concurring) (explaining that a prosecutor's comment suggesting that a defendant bears any burden, except where defendant has burden of proving affirmative defense, "undermines the presumption of innocence provided by our constitution").

Those principles are also consistent with the special ethical considerations imposed on prosecutors by Standard 3-6.8 of the ABA *Criminal Justice Standards for the Prosecution Function* (2017).[5] That standard includes the

---

[5] Standard 3-6.8 imposes the following special ethical considerations for prosecutors:

"(a) In closing argument to a jury (or to a judge sitting as trier of fact), the prosecutor should present arguments and a fair summary of the evidence that proves the defendant guilty beyond reasonable doubt. The prosecutor may argue all reasonable inferences from the evidence in the record, unless the prosecutor knows an inference to be false. The prosecutor should, to the extent time permits, review the evidence in the record before presenting closing argument. The prosecutor should not knowingly misstate the evidence in the record, or argue inferences that the prosecutor knows have no good-faith support in the record. The prosecutor should scrupulously avoid any reference to a defendant's decision not to testify.

"(b) The prosecutor should not argue in terms of counsel's personal opinion, and should not imply special or secret knowledge of the truth or of witness credibility.

"(c) The prosecutor should not make arguments calculated to appeal to improper prejudices of the trier of fact. The prosecutor should make only those arguments that are consistent with the trier's duty to decide the case on the evidence, and should not seek to divert the trier from that duty.

admonition that, "[i]f the prosecutor believes the defense closing argument is or was improper, the prosecutor should timely object and request relief from the court, rather than respond with arguments that the prosecutor knows are improper." As the United States Supreme Court recognized in *United States v. Young*, 470 US 1, 105 S Ct 1038, 84 L Ed 2d 1 (1985), "two improper arguments—two apparent wrongs—do not make for a right result," *id.* at 11, and a prosecutor's comments that cross the line of permissible conduct established by the ethical rules of the legal profession go beyond what is necessary to "right the scale," *id.* at 14.

Similarly, this court has stated—at least in the context of a civil case—that, if a party believes that their opponent has improperly commented on the party's failure to present evidence, "the party is not without recourse" and "may timely object, and if necessary, move to strike or request a curative jury instruction." *Cler v. Providence Health System-Oregon*, 349 Or 481, 489, 245 P3d 642 (2010). However, a party may not "remain[] silent during the opponent's closing argument and then resort[] to self-help." *Id.*; *see also Walker v. Penner*, 190 Or 542, 553, 227 P2d 316 (1951) (fact that counsel for one party has made improper argument does not permit opposing counsel "to commit a similar wrong, *** [i]n other words, two wrongs do not make a right" (internal quotation marks omitted)).

Accordingly, as we will explain, even when a prosecutor believes that defense counsel made an improper comment, a prosecutor's response is limited; the prosecutor should respond, if at all, with an objection, not an improper argument of the state's own.

B. *Parties' Arguments*

Relying primarily on this court's decision in *State v. Lincoln*, 250 Or 426, 443 P2d 178 (1968), which we examine

---

"(d) If the prosecutor presents rebuttal argument, the prosecutor may respond fairly to arguments made in the defense closing argument, but should not present or raise new issues. If the prosecutor believes the defense closing argument is or was improper, the prosecutor should timely object and request relief from the court, rather than respond with arguments that the prosecutor knows are improper."

ABA Standard, *Prosecution Function*, 3-6.8.

further below, the state argues that a prosecutor is free to comment on a defendant's failure to produce evidence, and to urge the jury to draw a reasonable inference from that failure, so long as the prosecutor does not comment on a defendant's decision not to testify. *See id.* at 427 (holding that "[t]here is no rule which prevents the state from commenting on [a] defendant's failure to call witnesses other than the defendant which were available to him"). According to the state, the Court of Appeals' post-*Lincoln* cases, including *Spieler* and *Mayo*, have created a rule that is inconsistent with this court's case law and have narrowed the circumstances under which a prosecutor may comment on a defendant's failure to present evidence beyond the limitations recognized by this court.

Defendant responds that the rule articulated by the Court of Appeals in *Spieler* and *Mayo* comports with this court's decisions in *Lincoln* and *Wederski*, and that the prosecutor's comments in this case were improper because they did not directly respond to defendant's arguments about the missing evidence. Instead, as the Court of Appeals concluded, they "speculated about *other* evidence defendant could have presented through cross-examination of the state's witnesses," something that the case law does not permit.

We acknowledge, as did the Court of Appeals in *Spieler*, that "*Wederski* and *Lincoln* and their progeny are not easily susceptible to principled extension and application, not the least because the baseline precedents simply announced categorical propositions without circumstantial nuance or limitation," and that "there are material procedural variations among the cases." 269 Or App at 641. We turn, therefore, to an examination of our prior cases discussing the scope of permissible prosecutorial comments to explore further some of those material procedural variations and how they relate to the fundamental principles of a fair trial that we have identified above.[6] As we will explain, although our prior cases have permitted certain comments in response to

---

[6] The parties agree that this is not a case in which the defendant bears the burden of production or proof regarding a defense along the lines discussed in *Mayo* and *Spieler*. Therefore, we limit our discussion to the final *Spieler* principle and our cases involving other responsive prosecutorial comments.

defense arguments, none of those cases address the situation where, as here, a prosecutor responds to a defendant's argument about the absence of certain evidence by noting that the defendant did not attempt to elicit *different* evidence through cross-examination of the state's witnesses.

C.   *Prior Cases*

We begin with this court's decision in *Wederski*. There, the defendant was charged with burglary after stealing, among other things, blank checks that were later forged. 230 Or at 58. In closing, defense counsel argued that the state had not presented any expert testimony to corroborate that it was the defendant's handwriting on the checks. *Id.* at 59-60. In rebuttal, the prosecutor responded, in part, that its expert witness had "sat through the entire trial," arguing that "there was no denial by [the defendant] that that was his handwriting or perhaps we might have used our expert witness." *Id.* at 60. Defense counsel moved for a mistrial, arguing that the state's comments invited the jury to consider what the witness might have testified to had he been called and "at least indirectly commented upon the defendant's failure to take the stand." *Id.* The trial court denied the motion, but this court reversed, concluding that the denial of defendant's timely motion "was such an abuse of discretion as to require reversal." *Id.* at 59. This court explained that, in addition to inviting the jury to consider evidence outside the record (the likely testimony of the state's purported expert), the state had drawn attention to the defendant's exercise of his right not to testify:

> "The state's reference to the defendant's failure to deny the forgeries, innocently though it may have been intended, could not have gone unnoticed by a jury which had waited in vain through two days of trial for the defendant to take the stand so they could hear what he had to say about the case. Article I, § 12, of the Oregon Constitution guarantees the privilege of the defendant to remain silent. The privilege is meaningless if the state may refer to the defendant's silence with impunity."

*Id.* at 62. Of particular importance to this court was the failure of the trial court to correct the harmful effect of the prosecutor's comments by providing a cautionary instruction to

the jury that "the defendant had no duty to prove or disprove anything; that his plea of not guilty denied everything; and that the jury could draw no inferences from the defendant's failure to contradict any evidence in the case." *Id.* at 61. *Wederski* therefore limited even oblique references to a defendant's exercise of the right not to testify and affirmed that a defendant generally is under no obligation to prove or disprove anything.

Subsequently, in *State v. Parker*, 235 Or 366, 384 P2d 986 (1963), this court permitted limited prosecutorial comment in response to a defendant's reference to evidence that had been excluded. There, the state's case rested on the credibility of a witness. *Id.* at 376. The jury knew that the witness had testified against the defendant in his first trial, but she had since repudiated her testimony and then "repudiated her repudiation." *Id.* at 375-76. The state had sought to introduce a tape recording of the witness's previous statement to law enforcement, but defense counsel objected on the ground that the recording had not been properly authenticated. *Id.* at 372. The trial court sustained the objection but on different grounds, ruling that the recording was inadmissible as cumulative. *Id.* at 373. In closing, after learning that defense counsel had referenced the excluded recording in the presence of the jury, the prosecutor commented that the defendant had failed to attempt to impeach the witness with the recording. *Id.* at 374-375. Noting that the credibility of the witness "was in grave doubt," this court concluded that the comment was permissible because "[t]he fact that defense counsel did not attempt to show inconsistency" in the witness's statements permitted "the inference that the defense could not find any inconsistency." *Id.* at 376. In reaching that conclusion, this court emphasized that the state had sought to introduce the evidence and that it had only been excluded as cumulative. Thus, there was not a basis for suggesting that the state was hiding the evidence because it was harmful.[7]

---

[7] The Court of Appeals in *Spieler* referred to a defendant's references to non-admitted evidence as "the obverse of the first principle derived from *Wederski*" and stated that,

"[j]ust as the prosecutor cannot invite the factfinder to consider nonadmitted evidence in aid of the state's case, if defense counsel invites the factfinder to consider nonadmitted evidence as undermining the state's case, the

Before learning that defense counsel had referenced the recording, the state had conceded that its ability to comment was limited:

> "'I can't tell the jury defense counsel wouldn't play it. That is improper. The only thing I could do is take what is in the record, and that is that a tape recording was taken of her conversation by [law enforcement]. I can't refer you—I can't even begin to refer to the fact that we didn't put it in.'"

*Id.* at 374. We agree with that articulation of the limitations on the state's ability to comment had defense counsel not brought the excluded evidence to the jury's attention after having moved to exclude it.

Finally, in *Lincoln*, this court held that a prosecutor's comment on the defendant's failure to call certain witnesses under the circumstances in that case did not amount to a comment on the defendant's failure to testify. 250 Or at 427. There, the defendant was charged with burglary of a service station. *Id.* At trial, some of the officers who had arrested and investigated the defendant were in the courtroom, but the state did not call them to testify. *Id.* During closing argument, defense counsel argued that "the state had not disclosed all of the information it possessed because all of the officers with knowledge of the investigation were not called as witnesses." *Id.* The prosecutor responded that "[c]ounsel knows if he wants to call any officers in the courtroom, he certainly can do that." *Id.* (internal quotation marks omitted). On appeal, defendant argued that the prosecutor's remarks amounted to a comment on his failure to testify. *Id.* This court affirmed in a short opinion, concluding:

> "It is clear that the comment in question in no way related to defendant's failure to take the witness stand. There is no rule which prevents the state from commenting on defendant's failure to call witnesses other than the defendant which were *available* to him."

*Id.* (emphasis added).

---

prosecutor is entitled to respond, *** so long as that response comports with the proper allocation of the burden of proof."

*Spieler*, 269 Or App at 642. Moreover, in *Cler*, this court clarified that rather than resort to self-help, a party should object to an improper comment by an opponent and request relief from the court. *Cler*, 349 Or at 489.

Our understanding of *Lincoln*'s holding is informed by the circumstances presented in that case. The prosecutor's comment was limited to a reference to the defendant's ability to call officers present in the courtroom. And the defendant in that case did not appear to dispute that the officers sitting in the courtroom were *available* to him. Thus, *Lincoln* does not support the conclusion that a prosecutor may *always* comment on a defendant's failure to present available evidence so long as such comment does not reference a defendant's failure to testify. Rather, it simply permitted the state, under the circumstances in that case, to point out that defendant had the ability to call the missing witnesses.[8]

In sum, the case law relied on by the parties suggests that, when a defendant points out that the state has failed to present evidence, the state may respond that "the defense has the ability to produce it," so long as the response comports with the proper allocation of proof, *Spieler*, 269 Or App at 642, and the record establishes that the missing evidence is *available* to the defendant, *Parker*, 235 Or at 374; *Lincoln*, 250 Or at 427. However, applying that principle to the facts of this case is not a perfect fit, because, as previously noted, our prior cases do not address the extent to which a prosecutor may respond to a defendant's statement about missing evidence by noting that the defendant did not attempt to elicit *different* evidence through cross-examination of the state's witnesses. As we will explain, the prosecutor's response in this case did not comport with whatever limited response our case law permits.

D. *Application to Facts of this Case*

During defendant's closing argument, defense counsel attacked the state's case, arguing that the state had failed to present: (1) the alleged text messages between H and A; and (2) any testimony from Deputy Canning, the lead investigator in the case. During his rebuttal argument, the prosecutor responded that the state had made both H and

---

[8] The Court of Appeals in *Spieler* interpreted the *Lincoln* response to be applicable in instances in which "defense counsel invites the factfinder to consider nonadmitted evidence as undermining the state's case, *** so long as that response comports with the proper allocation of the burden of proof." *Spieler*, 269 Or App at 642.

A available to defendant, and that defendant had failed to cross-examine those witnesses to elicit different evidence. We first separately review the Court of Appeals' determination as to each of those responses and then review its determination that the errors it found were not harmless.

   1.  *Text messages*

        As previously noted, in his closing argument, defense counsel referenced the alleged text messages exchanged between H and A:

> "[The prosecutor] even mentioned it in his closing statement about these text messages with her friend. *That was also not provided and, again, it wasn't provided because they don't exist.* [H] is talking about how she was describing what had happened to a friend. She is a young woman. It would be hard to imagine this conversation about this occurring without some text messages being involved and *** *there is no evidence of it. It simply does not exist.*"

(Emphases added.)

        The prosecutor did not object to defendant's argument as improper. Instead, the prosecutor responded with the argument on rebuttal that defense counsel could have addressed the missing evidence by eliciting *additional* evidence by way of cross-examination:

> "You know [H] talked to [A], because she told you, and [A] came and told you. Did the defendant ever cross about that? No. Was there any cross-examination of [A] to inquire *what did she tell you and what didn't she tell you*—"

(Emphasis added.) Defense counsel timely objected to this statement as "burden-shifting."

        Below, the state contended that the prosecutor was permitted to comment on defendant's failure to cross-examine A and H about the text messages because defendant had pointed out the state's failure to produce that evidence, relying on *Spieler. See* 269 Or App at 642 ("[I]f defense counsel invites the factfinder to consider nonadmitted evidence as undermining the state's case," the prosecutor may respond that the defense has the ability to produce it, "so long as that response comports with the proper allocation

of the burden of proof."). On review, the state argues that this court's case law allows a prosecutor to ask the jury to reject a defendant's proposed inference about the evidentiary record—*i.e.*, that the text messages did not exist—and that doing so here did not "ask[] the jury to infer guilt from the absence of evidence."

We agree with the state that a prosecutor may ask the jury to reject a defendant's proposed inference about the evidentiary record so long as it comports with the proper allocation of the burden of proof. However, that is not all the prosecutor did here. As the Court of Appeals noted, "unlike in *Spieler*, the prosecutor did not argue that defendant could have produced the text messages[.]" *Strain*, 332 Or App at 82. And even if the prosecutor had properly confined his response, this case is still unlike *Parker*, 235 Or at 374, where the record established that the defense possessed the recording with the witness's prior statement; there was nothing in the record here to indicate that the defense possessed the text messages.

The prosecutor might have objected to defendant's argument about the missing text messages, but he did not do so. He did not argue to the court, for example, that defendant was improperly testifying or invoking an inference unsupported by the record about the nonexistence of the text messages. Defense counsel's statement to the jury that the text messages "do not exist" was likely improper. We understand that defense counsel was likely attempting to challenge the credibility of H's and A's testimony by arguing that the state had not provided any evidence—the text messages—corroborating their testimony that they had texted immediately following the alleged incidents. However, in making that statement, defense counsel went beyond suggesting that the state's failure to present any text messages raised a question of whether those text messages existed, and instead asserted that the text messages *did not exist*. That argument may have exceeded the scope of the evidence that had been presented and was akin to arguing facts not in evidence. *See Burton*, 373 Or at 768-69 (holding that defense counsel's argument "point[ing] accurately to an absence of evidence" was permissible, but statement suggesting to the jury that it

could make a finding "for which there was no good-faith support in the record," was improper). But as previously noted, our decision in *Cler* and even the ethical considerations in Standard 3-6.8 of the ABA *Criminal Justice Standards for the Prosecution Function*, call for an objection—not an improper jury argument—in that circumstance.

Instead, the prosecutor's comment on rebuttal, in essence, suggested improperly that defense counsel should have cross-examined the state's witnesses to elicit *additional* evidence *other* than the text messages, *i.e.*, the content of the conversation between H and A that purportedly occurred after the text messages were exchanged. Not only was the prosecutor arguing improperly that defendant had some burden to cross-examine A about evidence regarding factual issues on which the state bore the burden of proof, but the prosecutor was also aware that the content of the conversation had been excluded as inadmissible hearsay, and that A's testimony had been limited to the fact of H's contact with A following the incident and H's demeanor during the subsequent conversation.[9]

As this court explained in *Wederski* and reiterated recently in *Burton,* a defendant has the right not to cross-examine the state's witnesses and does not have to prove or disprove anything. *See Wederski*, 250 Or at 61 ("[T]he defendant had no duty to prove or disprove anything; *** the jury could draw no inferences from the defendant's failure to contradict any evidence in the case."); *Burton*, 373 Or at 769 (explaining that "although defendant was entitled to cross-examine [the detective] about her investigation, he was under no obligation to do so or to prove or disprove anything to the jury"). Thus, we agree with the Court of Appeals that, whatever limited response may have been allowed, the prosecutor exceeded it here, and the trial court erred when it overruled defendant's objection on the basis that defendant had "open[ed] the door" to the prosecutor's response that defense counsel failed to cross-examine A or H.

--------

[9] Defendant did not cross-examine A, perhaps because her testimony was offered for such a limited purpose. Such questioning by defense counsel on inadmissible evidence likely would have been impermissible. *See* OEC 103(3) (providing that proceedings "shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means").

## 2.   *Deputy Canning*

In his closing, defense counsel also pointed out the state's failure to call the lead investigator, Deputy Canning, as a witness:

"Finally, we heard from [H] that when she made this report, she worked with the lead investigating officer on this case, Deputy *** Canning, a witness that the [s]tate chose not to provide to you. That the officer who responded to this, the officer who wrote all the police reports in this case, the one who took the statements from [H], the [s]tate could not be bothered to bring that witness in and testify. Bring that witness in, stand up to cross-examination and be able to provide to you all what is provided in every other criminal case, which is the testimony of the responding officer. It did not happen."

The prosecutor responded again with a reference to a lack of cross-examination of H by defense counsel:

"The last thing was about in regard[] to Deputy Canning and something being hidden, because [we] didn't call Deputy Canning. [H] is the one that needs to get on the stand and tell you what happened. The officer can't tell you what [H] said. [H] needs to tell you what was said and [H] *** came in *** and told you what happened. *** *By the way, if there was something, again, there's cross-examination. You cross-examine [H] about stuff that (inaudible) [g]rand [j]ury was different. No cross-examination (inaudible) you told the officer anything that was different.* That's another red herring."

(Emphasis added.) Defendant did not object to that statement.

Defendant contends, as he did below, that his argument is preserved because another objection on the basis of burden-shifting would have been futile. The state disagrees and argues that, in any event, the trial court did not err in allowing the prosecutor to make such an argument. The Court of Appeals concluded that the argument was preserved because defendant was not obligated to object again to the prosecutor's additional comments, which came in direct succession to defendant's previous objection that the trial court had overruled. *Strain*, 332 Or App at 80. We agree. We have explained that "[o]ur requirements respecting preservation

do not demand that parties make what the record demonstrates would be futile gestures." *State v. George*, 337 Or 329, 339, 97 P3d 656 (2004); *see also State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990) ("When the trial court excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile."). All parties and the trial court were fully apprised of each other's positions regarding the burden-shifting objection; once defendant had brought his objection to the court's attention and the court had ruled against him on the basis that defendant had "open[ed] the door," a second objection on the same grounds would have been futile. We therefore turn to the merits.

Defendant maintains that his argument was directed at the state's burden of proof and questioned Deputy Canning's credibility and the quality of her investigation. Defendant argues further that Canning was under investigation when the trial commenced, and that the prosecutor had removed Canning from his witness list to avoid having to provide defendant with any impeachment materials relating to that investigation—materials that would have been under the exclusive control of the state.[10] Therefore, defendant asserts, he correctly invoked the missing witness inference.[11] However, he also acknowledges that, to the extent

---

[10] Upon learning that Deputy Canning was under investigation and placed on administrative leave, defendant moved pre-trial to compel production of the investigative materials to impeach Canning's credibility. *See* ORS 135.815(1)(g) (C) (requiring district attorney to disclose to defendant any material or information that tends to "[i]mpeach a person the district attorney intends to call as a witness at the trial").

[11] Defendant did not raise that argument before the trial court or the Court of Appeals; thus, it is not preserved, and we need not decide the propriety of his invocation. However, we note that defendant did not create a record establishing that a missing witness inference would have been appropriate. A party seeking to invoke a missing witness inference should make a record that "the particular circumstances of [the] case" support use of the inference. *Cler*, 349 Or at 497 (Linder, J., dissenting). The party should establish, for example, that the witness was within the power of the other party to produce; that it would have been natural for the party to call the witness; that the testimony would be material rather than trivial; and that there is a reasonable probability that the witness's testimony would be adverse. *See id.* at 496-98 (Linder, J., dissenting) (explaining requirements for proper inference). In some jurisdictions—such as Washington—a witness's availability turns on the relationship between the party and the witness, such as whether there exists "a community of interest between the party and the witness" or where the party has "so superior an opportunity for knowledge of a witness" that it would be "reasonably probable" that their failure to testify is because their

defense counsel's reference to Canning was misleading, the only permissible invited response from the prosecutor would have been that defendant could also have called Canning, the exact scenario that was permitted in *Lincoln*.

Here, the prosecutor did not simply object to defendant's missing witness argument or the statements about what happens "in every other case" as exceeding the record evidence. Nor did the prosecutor limit his response, like the prosecutor in *Lincoln,* to a statement that defense counsel could have called Canning as a witness. Instead, the prosecutor responded by pointing to defendant's failure to cross-examine H in an attempt to establish any inconsistencies between the statements that she had made to Canning or previously to the grand jury. Before this court, the state characterizes the prosecutor's response as "re-focusing the jury on the evidence before it," *i.e.*, H's testimony. But there is a difference between a prosecutor directing a jury back to the evidence that the state has presented as satisfying its burden of proof, on the one hand, and suggesting to the jury that the defense should have cross-examined a state's witness to prove its theory of the case, on the other. *See Perez*, 373 Or at 619 (Bushong, J., concurring) (noting that proper prosecutorial argument should "focus[] instead on whether the evidence in the case satisfies" the state's burden of proof).

Again, the prosecutor's response suggested that defendant had an obligation to elicit evidence about matters on which the state bore the burden of proof. It is not defendant's burden to cross-examine the state's witnesses to establish the extent of the state's investigation or the work undertaken by the lead investigator on the case, although they may certainly do so. As previously emphasized, defendant was under no obligation to cross-examine the state's

testimony would be adverse. *State v. Blair*, 117 Wash 2d 479, 490, 816 P2d 718, 724 (1991). And given the potential for misleading the jury through the abuse of an inference, the party seeking to invoke the inference must establish all the requirements for use of the doctrine before requesting a jury instruction or arguing the inference to the jury. *State v. Montgomery*, 163 Wash 2d 577, 598-99, 183 P3d 267, 278 (2008) (listing requirements); 11 Wash Prac, Pattern Jury Instr Crim, WPIC 5.20 (5th ed 2024) (providing that failure to produce witness instruction "should be used sparingly," and "only given when the circumstances meet the requirements outlined in the Comment to this instruction").

witnesses on any specific issue, and the prosecutor's statement suggesting otherwise thus impermissibly shifted the burden of proof to defendant. *See Perez*, 373 Or at 619 (Bushong, J., concurring) (noting that a prosecutor "should never argue or suggest to the jury that the defendant has the burden of proving anything," except where defendant has burden of proving affirmative defense). Moreover, defendant did not argue that H had made prior inconsistent statements to Canning. Accordingly, we again agree with the Court of Appeals that the prosecutor's response was improper.

3. *Prejudicial error*

Having concluded that the trial court erred in permitting the prosecutor's comments, we next must determine whether the errors were harmless—that is, whether there was little likelihood that the trial court's errors tended to affect the verdict. *E.g.*, *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

The Court of Appeals concluded that the errors were prejudicial, reasoning that the crux of defendant's theory at trial was that the sexual interactions with H were consensual, and thus, "[w]hen the prosecutor was permitted to argue that defendant failed to cross-examine H or her friend in support of that theory, the state improperly undercut defendant's credibility in a case in which credibility was key[,]" which "had some likelihood of affecting the jury's verdict." *Strain*, 332 Or App at 83 (internal quotation marks and citation omitted). In its briefing before this court, the state does not argue that any error in this case was harmless, and, in any event, we agree with the Court of Appeals that there was some likelihood that the trial court's errors affected the verdict.

Although the prosecutor's conduct in this case "did not involve calculated misconduct," *Wederski*, 230 Or at 62, we must remember that, in the context of closing argument, counsel's primary goal is "to persuade the jury to adopt a particular view of the facts." *Ireland v. Mitchell*, 226 Or 286, 295, 359 P 2d 894 (1961), *overruled in part on other grounds by State v. Payne*, 366 Or 588, 468 P3d 445 (2020). Here, defendant's overarching theory at trial

was that the state's version of events was not true, and he argued that the state had not met its burden in proving the charges beyond a reasonable doubt. Importantly, defendant raised no matter—such as an affirmative defense—requiring that he bear any burden of production or persuasion. In other words, defendant bore no burden of proving that *his* version of the events *was* true. However, the prosecutor's statements effectively suggested to the jury that defendant had an obligation to rebut the state's evidence in order to support his theory that H was not telling the truth. Such comments undermine a defendant's presumption of innocence, particularly in a case such as this, which hinged on the jury's credibility determinations.[12] And that is especially true where, as here, defense counsel objected to the prosecutor's argument as "burden-shifting," and the trial court overruled the objection, stating that defendant had "open[ed] the door." Whatever permissible response may be available under our and the Court of Appeals' case law, the prosecutor's comments exceeded those limits, and by stating that defendant had "open[ed] the door," the trial court "accentuated the error," and, in turn, the jury could have understood the trial court to have approved of the prosecutor's statements. *Banks*, 367 Or at 590 (internal quotation marks omitted); *see also Cler*, 349 Or at 491 (defense counsel's statements "appear[ed] to have received the trial court's imprimatur" when court overruled plaintiff's objections to them).

In sum, the prosecution's comments about defendant's failure to cross-examine the state's witnesses created a risk that jurors would infer that he had a responsibility to do so. We therefore cannot say that the prosecution's comments regarding the failure to cross-examine had little likelihood to have affected the jury's verdict.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[12] As Justice Bushong recently noted, "[p]rosecutors must resist the temptation to attempt to 'level the playing field' in a criminal trial." *Perez*, 373 Or at 620 (Bushong, J., concurring). "That might seem fair, but it is not the way that criminal prosecutions work. *** The seeming unfairness of that situation is the foundation of our criminal justice system." *Id.*

**JAMES, J.,** concurring.

Based on the record of what was said in closing argument in this case, I join in the majority. I write separately only to note that, in my view, the majority opinion should not be read as announcing a blanket prohibition against counsel ever commenting during closing argument on what opposing counsel did not ask a witness, whether in their direct or cross-examination. There may be a subtle distinction between pointing out what was not asked of a witness in a way that shifts the burden of proof and persuasion, as in this case, and pointing out what was not asked of a witness as a way of highlighting the flaws in an opposing party's strategy or theory of a case. That latter scenario is not present in this case. The appropriateness of that type of argument may be considered in the future but is not decided here.

**BUSHONG, J.,** dissenting.

The majority opinion concludes that certain comments made by the prosecutor during closing argument impermissibly suggested to the jury that the defendant had the burden of proving the truth of his version of the events. I agree with that part of the opinion. I write separately for two reasons. First, I think this court should make it clear that prosecutors may not comment *at all* on a criminal defendant's decision to not call witnesses or present evidence or not question witnesses on cross-examination, except where the defendant bears the burden of proving an affirmative defense or producing evidence in support of a defense. Second, I dissent from the disposition in this case because I think that the error here was harmless.

I have previously written about the need for "clear guidance from this court on when a prosecutor's closing arguments are improper and when they are not." *State v. Perez*, 373 Or 591, 616, 568 P3d 940 (2025) (Bushong, J., concurring). This case presents another opportunity for this court to provide such guidance. Unfortunately, the majority opinion declines to fully do so, in part because our prior cases, as previously interpreted by the Court of Appeals, are not clear and, in at least one respect, stray from bedrock principles of constitutional law.

As the majority opinion correctly points out, a prosecutor's arguments must always comport with the constitutional protections afforded a criminal defendant at trial. 374 Or at 791. The constitutional protections regarding the presumption of innocence, a defendant's right not to testify or present evidence, and the burden of proof are some of the most critical safeguards to ensure that the defendant receives a fair trial, as the majority opinion observes. 374 Or 790-91. Commenting on a defendant's choice not to call witnesses or to present other evidence or on a defense attorney's decision to not ask questions on cross-examination runs afoul of those protections, in my view, except where the defendant has the burden of production or proof under ORS 161.055. *That* should be the clear guidance provided by this court.

The majority opinion declines to provide that clear guidance, concluding that it is foreclosed by our prior case law, primarily *State v. Lincoln*, 250 Or 426, 443 P2d 178 (1968). According to the majority opinion, if the defense points out that the state has failed to present evidence, our cases allow the state to respond that "the defense had the ability to produce it," if that response comports with a proper allocation of the burden of proof and the record establishes "that the missing evidence is *available* to the defendant." 374 Or at 797 (emphasis in original). I disagree.

In my view, any rule that allows a prosecutor to respond that *the defense* could have produced the missing evidence does not comport with the proper allocation of the burden of proof and other constitutional protections afforded a criminal defendant at trial, unless a statute places the burden of production or proof on the defendant. In addition, conditioning the prosecutor's comment on the *availability* of the evidence to the defense is unclear—it raises issues on what it means to be "available"—and it does not go far enough to protect those constitutional safeguards.

I acknowledge that *Lincoln* allowed a prosecutor to make such a comment where the missing evidence was available to the defendant under the circumstances presented in that case. The parties here disagree on how *Lincoln* applies in this case. The state contends that *Lincoln* allows

prosecutors to comment on a defendant's failure to present any evidence that was available to the defendant and that the Court of Appeals' post-*Lincoln* cases have unduly *limited* the circumstances in which a prosecutor may comment on a defendant's failure to present such evidence.[1] Defendant contends that *Lincoln* has been appropriately limited by the Court of Appeals, and that the prosecutor's comments in this case were impermissible under *Lincoln* as so construed.

In my view, neither party is quite right. As I will explain, I think that *Lincoln* should be confined to the unusual facts presented in that case and that we should consider overruling *Lincoln* if the opportunity to do so is presented in another case.[2]

A.  Lincoln *Should Be Narrowly Applied, and We Should Consider Overruling It in a Future Case.*

The defendant in *Lincoln* was convicted of the burglary of a service station. 250 Or at 427. The police apprehended the defendant and two other suspects at the scene of the crime. *Id*. At trial, the state called as witnesses some—but not all—of the police officers who had participated in the arrests and the resulting investigation. *Id*. In closing argument, defense counsel contended that the state had not met its burden of proving that the defendant was guilty beyond a reasonable doubt in part because the state did not call as witnesses all the police officers who had knowledge of the investigation. *Id*. In rebuttal, the prosecutor pointed out that some of those officers had been seated in the courtroom during trial, and argued, "if [defense counsel] wants to call any officers in the courtroom, he certainly can do that." *Id*. at 427 (quoting the prosecutor's rebuttal argument). Defendant objected and moved for a mistrial, arguing that the prosecutor's comment amounted to impermissible burden shifting. The trial court denied the motion. *Id*.

---

[1] The Court of Appeals applied *Lincoln* and an earlier case, *State v. Wederski*, 230 Or 57, 368 P2d 393 (1962), in *State v. Spieler*, 269 Or App 623, 346 P3d 549 (2015). It then applied *Spieler* in *State v. Mayo*, 303 Or App 525, 465 P3d 267 (2020).

[2] Defendant does not argue that *Lincoln* should be overruled, so it would be more appropriate in this case to confine *Lincoln* to its facts. We could then address whether it should be overruled in a future case where that issue is squarely presented.

On appeal, this court affirmed in a one-page *per curiam* opinion. In that opinion, we stated: "There is no rule which prevents the state from commenting on [the] defendant's failure to call witnesses other than the defendant which were available to him." *Id*. The court cited no authority for that proposition, nor did it examine how such a comment might implicate constitutional protections, including the presumption of innocence, the burden of proof, and a defendant's constitutional right not to present evidence at trial.

In my view, those constitutional protections are implicated by any "rule" that allows the state to comment on a defendant's failure to call witnesses if those witnesses were "available" to the defendant. Thus, I would confine *Lincoln* to the facts presented in that case, that is, to only allow a prosecutor to comment on the defense's failure to call "any officers in the courtroom." As so limited, the prosecutor's comments in this case were not permissible under *Lincoln*.

In a future case, I think we should consider overruling *Lincoln* to the extent that it permits a prosecutor to comment on a defendant's failure to call witnesses who were available in the courtroom. A better rule, in my view, would *preclude* the state from commenting on a defendant's failure to call witnesses, present evidence, or ask questions on cross-examination—regardless of whether the missing evidence or witnesses were "available" to defendant—except where the defendant has the burden of production or proof. That clear rule, in my view, follows from the constitutional protections afforded criminal defendants at trial.

The only justification one might offer for allowing a prosecutor to comment on a defendant's failure to call witnesses or present other "available" evidence after the defense counsel points out the state's failure to call witnesses or present evidence is that it just seems "fair" to allow the prosecutor to make such a comment. But that justification is insufficient. The constitutional limitations on what a prosecutor can and cannot do at trial do not provide—and were never meant to provide—a level playing field that treats the state the same as the defendant.

In a criminal trial, a defendant's liberty is at stake. That is why the state bears almost all the burdens, including the heavy burden of proving the defendant's guilt beyond a reasonable doubt. That gives a defense counsel the opportunity to argue that the state failed to meet its burden by, for example, failing to call witnesses who might have knowledge of the events, failing to present DNA or other evidence that could have helped the state meet its burden, or failing to ask witnesses the right questions. If a defense counsel makes those arguments, that does not give the state a corresponding opportunity to highlight the evidence that the defense failed to offer in support of its theory of the case.

If the defense points out weaknesses in the state's case, a prosecutor may contend that it did not need to present additional evidence because the evidence the state has presented is all that it needed to meet its burden. That, in my view, is the *only* permissible response. It is not permissible for the prosecutor to argue that the *defense* could have called witnesses, or presented other evidence, or asked additional questions, if the defense really thought the jury needed to hear such evidence. To the extent that *Lincoln* would allow a prosecutor to make such arguments, that case should be reconsidered and possibly overruled.

B.   *The Error Here Was Harmless*

My second reason for writing separately is that, although I agree with the majority opinion that the prosecutor's comments were improper, I believe that the error here was harmless. Under Article VII (Amended), section 3, of the Oregon Constitution, we are required to affirm a conviction on appeal notwithstanding any error committed during the trial, if "there [is] little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Although the state does not present a harmless error argument, we have an independent obligation to determine whether the error that we have identified was likely to have affected the verdict. *State v. Sperou*, 365 Or 121, 140, 442 P3d 581 (2019).

In this case, the "particular error" involved the prosecutor's improper comments that impermissibly suggested

to the jury that the defendant had the burden of proving his version of the events. I would conclude that that error was harmless, because I do not think there is any likelihood that the jury thought, based on the prosecutor's improper comments, that the burden of proof had shifted to the defendant in any respect.

The trial court instructed the jury on multiple occasions—and the prosecutor acknowledged on multiple occasions—that defendant was presumed innocent and that the state had the burden of proving defendant's guilt beyond a reasonable doubt. The court gave that instruction preliminarily, before *voir dire*, and then twice after *voir dire* before opening statements. The prosecutor acknowledged in his opening statement that the burden was on the state, indicating after summarizing the evidence and the charges that "the state will prove these six counts to you beyond a reasonable doubt[.]" The prosecutor began his closing argument by stating that there were six charges for the jury to decide, "which we have proven to you beyond a reasonable doubt." The prosecutor concluded his closing argument by stating that "we've proven [the charges] to you beyond a reasonable doubt."

Defense counsel, in his closing argument, reiterated multiple times that the jury's role under the law "is to determine whether or not the State has proven this case beyond a reasonable doubt." In his rebuttal closing, the prosecutor stated multiple times that the jury's job was to decide from the evidence whether the state had met its burden of proving defendant's guilt beyond a reasonable doubt. According to the prosecutor, "[t]hat's what the state's burden is and we have met that in this case." The prosecutor concluded by arguing that the state has proven its case "beyond a reasonable doubt."

During the final jury instructions after closing, the court instructed the jury:

> "The defendant is innocent unless and until the defendant is proven guilty beyond a reasonable doubt. The burden is on the state to prove the guilt of the defendant beyond a reasonable doubt."

The court then instructed the jury that "reasonable doubt" is an "honest uncertainty" as to the defendant's guilt. Then, before instructing the jury on the elements of each count, the court reiterated that "the state must prove beyond a reasonable doubt" each of the elements of the charge.

There was no suggestion by counsel or the court at any time that the defendant had the burden of proof on anything at issue in the trial. Under the circumstances, there was no likelihood, in my view, that the prosecutor's improper comments during the rebuttal closing led the jury to think that the burden had shifted to defendant on any issue in dispute in this case.

For that reason, although I agree with the majority opinion that the prosecutor's comments impermissibly suggested that the defendant had the burden of proof, I respectfully dissent from the disposition of this case.